**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Argon Credit LLC | Case No. 16-39654 |
| Debtor. | Hon. _____ |
| In re: | Chapter 11 |
| Argon X LLC | Case No. 16-39655 |
| Debtor. | Hon. _____ |

**NOTICE OF MOTION**

     **PLEASE TAKE NOTICE** that on December 21, 2016 at 2:15pm, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Judge Deborah L. Thorne, Bankruptcy Judge, in Courtroom 613, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other Judge who may be sitting in her place and stead, and shall then and there present the **Debtors' Motion Authorizing the Maintenance of Bank Accounts and Continued use of Existing Business Forms and Checks, Authorizing the Continued use of the Existing Cash Management System, and, Waiving Certain Investment and Deposit Guidelines**, a copy of which is attached and hereby served upon you, at which time and place you may appear if you so see fit.

Dated: December 19, 2016

                                                   Respectfully submitted,

                                                   Argon Credit LLC and Argon X LLC,
                                                        Debtors-in-possession herein.

                                                 By:    /s/ E. Philip Groben
                                                             E. Philip Groben

Matthew T. Gensburg (ARDC# 6187247)
E. Philip Groben (ARDC# 6299914)
DALE & GENSBURG, P.C.
200 West Adams Street, Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242
Email: mgensburg@dandgpc.com
Email: pgroben@dandgpc.com

# **CERTIFICATE OF SERVICE**

STATE OF ILLINOIS        )
                         )    SS
COUNTY OF COOK           )

E. PHILIP GROBEN, being first duly sworn on oath, deposes and stated that he served a copy of the foregoing Notice together with a copy of the Motion attached thereto on the persons named below, by either service through CM/ECF, facsimile, FedEx Overnight, or as otherwise indicated, on December 19, 2016.            BY: /s/ E. Philip Groben

| | |
|---|---|
| Attorney General for the State of Illinois<br>Attn: Bankr. Section<br>500 S. 2nd Street<br>Springfield, IL 62701<br>Via Fax: (217) 785-2551 | Securities and Exchange Commission<br>100 F Street, NE<br>Washington, DC 20549<br>Via Email: secbankruptcy@sec.gov<br>Via Fax: (202) 772-9265 |
| Illinois Department of Revenue<br>Attn: Bankr. Section<br>100 West Randolph St.<br>Chicago, IL 60601<br>Via Fax: (217) 782-6337 | Addison Professional Financial<br>7076 Solutions Center<br>Chicago, IL 60677<br>Via FedEx Overnight<br>Via Fax: (312) 424-0900 |
| Internal Revenue Service<br>Centralized Insolvency<br>PO Box 7643<br>Philadelphia, PA 19101-7346<br>Via Fax: (855) 782-6337 | B Money Holdings<br>2569 College Hill Circle<br>Schaumberg, IL 60173<br>Via FedEx Overnight |
| United States Attorney of the<br>Northern District of Illinois<br>Attn: Bankruptcy Section<br>219 S. Dearborn St., 5th Floor<br>Chicago, IL 60604<br>Via Fax: (312) 353-2067 | Broadmark Capital LLC<br>600 University St., Ste. 1800<br>Seattle WA 98101<br>Via FedEx Overnight |
| | Budd Larner, P.C.<br>150 John F. Kennedy Pkwy<br>Short Hills, NJ 07078<br>Via Fax: (973) 379-7734 |
| United States Trustee for the<br>Northern District of Illinois<br>219 S. Dearborn St., Rm. 873<br>Chicago, IL 60604<br>Via Fax: (312) 886-5794<br>Via CM/ECF | DevBridge Group, LLC<br>343 W. Erie St., Ste. 600<br>Chicago, IL 60654<br>Via Fax: (312) 277-1068 |

Enova International, Inc.
175 W. Jackson Blvd., Ste. 1000
Chicago, IL 60604
Via Fax: (312) 268-6465

Fintech Financial, LLC
Attn: Mindi Park
101 Research Park Dr.
Mission, SD 57555
Via FedEx Overnight

Gallop Solutions, Inc.
P.O. Box 796575
Dallas, TX 75379
Via Fax: (610) 910-3476

InContact
7730 S. Union Park Ave., Ste. 500
Sal Lake City, UT 84047
Via FedEx Overnight

LendingTree
PO Box 840470
Dallas, TX 75284
Via FedEx Overnight

Meghan Hubbard
760 Village Center Dt., Ste. 200
Via Burr Ridge, IL 60527
Via FedEx Overnight

Merit Management Group
760 Village Center Dr.
Burr Ridge, IL 60527
Via Fax: (630) 455-4646

Peraza Capital and Investment
111 2nd Ave. NE Ste. 705
Saint Petersburg FL 33701
Via Fax: (767) 821-4373

Percolate Industries
107 Grand St., 2nd Floor
New York, NY 10013
Via FedEx Overnight

Productive Edge LLC
11 E. Illinois St., Ste. 200
Chicago, IL 60611
Via FedEx Overnight

Robert Half
12400 Collections Center Dr.
Chicago, IL 60693
Via FedEx Overnight

RSM
5155 Paysphere Circle
Chicago, IL 60674
Via FedEx Overnight

Swoon
8474 Solution Center
Chicago, IL 60677
Via FedEx Overnight

Yodlee/Envestnet
35 E. Wacker Pl., Ste. 2400
Chicago, IL 60601
Via Fax: (650) 980-3845

Velocify
Attn: Billing Dept.
222 N. Sepulveda, 18th. Floor
El Segundo, CA 90245
Via Fax: (310) 988-1855

Fund Recovery Services, LLC
Attn: Franklin Levin, Esq.
100 Canal Pointe Blvd., Ste. 208
Princeton, NJ 08540
Via FedEx Overnight
Via CM/ECF


/s/ E. Philip Groben

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Argon Credit LLC<br><br>       Debtor. | Chapter 11<br><br>Case No. 16-39654<br><br>Hon. _____ |
| In re:<br><br>Argon X LLC<br><br>       Debtor. | Chapter 11<br><br>Case No. 16-39655<br><br>Hon. _____ |

**EMERGENCY JOINT MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE MAINTENANCE OF BANK ACCOUNTS AND CONTINUED
USE OF EXISTING BUSINESS FORMS AND CHECKS, AUTHORIZING THE
CONTINUED USE OF THE EXISTING CASH MANAGEMENT SYSTEM, AND,
WAIVING CERTAIN INVESTMENT AND DEPOSIT GUIDELINES**

Argon X LLC and Argon Credit LLC, above-captioned debtors and debtors-in-possession herein (collectively the "**Debtors**") by and through their attorneys, Matthew T. Gensburg, E. Phillip Groben and Dale & Gensburg, P.C., hereby moves this Court (the "**Motion**") pursuant to Section 105, 245, 363, 364, and 553 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy code**"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the investment and deposit guidelines (the "**Guidelines**") promulgated by the Office of the United States Trustee, for entry of an order: (a) authorizing the maintenance of bank accounts and continued use of existing business forms and checks; (b) authorizing but not directing continued use of the existing cash management system; (c) waiving certain of the investment and deposit Guidelines established by the United States Trustee for the Northern District of Illinois; (d) granting administrative expense status to

postpetition intercompany claims; and (e) providing any additional relief as is necessary to effectuate the foregoing.  In support of this Motion, the Debtors respectfully state as follows:

### Status of the Case

1. On December 16, 2016 (the "**Petition Date**"), the above named Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and a creditor's committee has not yet been appointed in these cases.

### Jurisdiction, Venue, and Statutory Predicates

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §1408.  This matter is core within the meaning of 28 U.S.C. §157(b)(2).

5. The statutory predicates for the relief sought herein are sections 105(a), 345, 363, 364 and 553 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004(h).

### Background

6. Argon Credit LLC ("**Argon Credit**") is a Delaware limited liability company, organized in October 2013.  Argon X LLC ("**Argon X**") is a Delaware limited liability company organized on April 23, 2016.  In conjunction with its affiliates, the Debtors operate a domestic based online lending platform specializing in near-prime consumer installment loans.  The Debtors' customer base is the large near-prime population which is an underserved community with limited access to credit.  The Debtors, through their non-debtor affiliates, Argon Credit of

2

Alabama LLC, Argon Credit of California LLC, Argon Credit of Georgia LLC, Argon Credit of Illinois LLC, Argon Credit of Louisiana LLC and Argon Credit of Utah LLC (collectively, the "**State Affiliates**"), operate on a state-by-state licensing model, providing vital liquidity and access to credit. To date, the Debtors, through their State Affiliates has originated over $50 million in consumer installment loans.

7. The Debtors offer an alternative for borrowers seeking convenient and affordable personal loans. Their loans involve level fixed-payments and are closed end and fully amortizing. The Debtors' loans are unsecured, funded up to $35,000, carry interest rates of between 19% and 95%+ and have a two to four year term. The Debtors' underwriting process is both an automated and manual. All applications are taken through the Debtors' website, Argoncredit.com. The Debtors have an automated decision making engine that declines an applicant if any of three credit-related scores do not reach a minimum value. If the applicant passes the automated algorithm, then their application is submitted to the underwriting and verification team for manual review.

8. The Debtors' consumer loan portfolio is generated by the State Affiliates. Through a Support and Servicing Agreement, Argon Credit (i) provides pre-servicing support and administrative services in furtherance of the State Affiliates' business of originating consumer loans and (ii) services the consumer loans until they are sold. Argon Credit's pre-servicing support and administrative duties include (a) assisting with any licensing needs of the State Affiliates; (b) assisting with the creation of loan documents, disclosures and other documents and processes necessary for the State Affiliates to originate consumer loans; (c) providing leads to consumers who may be interested in obtaining consumer loans; (d) underwriting, and (e) creating electronic records. Additionally, Argon Credit (f) collects all payments due under each consumer loan when the same become due and payable; (g) provides an analysis of the consumer loans and identifies

3

loans eligible for sale; and (h) with respect to any loan which is in default, undertakes appropriate collection procedures, or pursues appropriate modifications or restructuring consistent with the State Affiliates' directions.

9.  Pursuant to a Master Consumer Loan Purchase Agreement, the State Affiliates periodically sell to Argon X their portfolio of eligible consumer loans. The purchase price for each consumer loan is equal to one hundred percent (100%) of the outstanding unpaid balance of the eligible consumer loan as set by a consumer loan schedule transmitted to Argon X. Pursuant to a separate Servicing Agreement, the Argon Credit also provides Argon X with both pre-servicing support and administrative services for the consumer loans it acquires. These services include collecting payments due under the consumer loans, and providing all statements, reports and records required the Debtors' lender.

10. A detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these cases, is more fully set forth in the *Declaration of Raviv Wolfe in Support of the Debtor's Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

**A.     The Debtor's Bank Accounts and Cash Management System**

11. Prior to the commencement of their Chapter 11 cases, and in the ordinary course of their business, the Debtors maintained a system of depository accounts at Schaumburg Bank & Trust Company, N.A., ("**Schaumburg Bank & Trust**"), which make up a part of a system of accounts (the "**Bank Accounts**") held by the Debtors and their affiliates at Schaumburg Bank & Trust (collectively the "**Cash Management System**"). The Cash Management System ensures

4

the Debtors' ability to efficiently monitor and control their cash position. A list of the accounts within the Debtor's Cash Management System is attached hereto as **Exhibit "A"**.

12. The Debtors' Cash Management System as of the Petition Date is summarized as follows:

a. Disbursement Account: Argon X maintains an account subject to a *Deposit Account Control Agreement* (the "**DACA**") with Schaumburg Bank & Trust (the "**Disbursement Account**"). Princeton Alternative Fund ("**Princeton**") is the holder of a claim allegedly secured by the Debtors' assets, and the Debtors make payments to Princeton from the Disbursement Account. The DACA was executed in June 2016 by Schaumburg Bank & Trust, the Debtor and Princeton. Pursuant to the DACA, Schaumburg Bank & Trust is authorized to comply with the instructions of Princeton directing disposition of funds within the Disbursement Account in accordance with a separate agreement between the Debtor and Schaumburg Bank & Trust. The Debtors' access to, and control over, the Disbursement Account may be severed upon receipt of notice by Schaumburg Bank & Trust from Princeton. Historically, funds within the Disbursement Account are used to pay down a revolving line of credit creating availability for funding future consumer loans.

b. Lockbox Account: Argon Credit maintains a Lockbox Account with Schaumburg Bank & Trust (the "**Lockbox Account**") to which Argon's borrowers make loan repayments multiple times every day. Deposits made into the Lockbox Account include checks, wire transfers, automated clearinghouse transfers, credit card payments (VISA, MasterCard, Discover and American Express as well as other debit cards), and cash receipts. Funds from the Lockbox are transferred to the Operating Account (defined below) or to Princeton.

c. Merchant Account: Argon Credit maintains a depository account with Schaumburg Bank & Trust into which borrowers make direct deposit or ACH and debit card transfers. Funds within this account are transferred the Operating Account or, when an excess of funds pool in the Merchant Account, to Princeton.

d. Operating Account: Argon Credit maintains an operating account (the "**Operating Account**") with Schaumburg Bank & Trust, through which the Debtors' fund all of their operations. In addition, when necessary to pay for certain expenses, the Operating Account also remits wire payments and automated clearinghouse transfers. Through the Operating Account, the Debtor makes payments on expenses incurred through ordinary course operations, including: payment of wages and benefits to its employees on a biweekly basis, obligations owed to its landlord made on a monthly basis, and payments due to vendors and other expenses necessary to the daily operations of the Debtor.

5

    e. <u>Originator Accounts</u>: Four of the Debtor's State Affiliates are required to maintain separate accounts for purposes of compliance with state licensing and regulatory purposes. These State Affiliates are Argon Credit of Louisiana LLC, Argon Credit of Missouri LLC, Argon Credit of New Mexico LLC, and Argon Credit of Texas LLC. These accounts are held at with Schaumburg Bank & Trust but are not used in the day-to-day activities of the Debtors or the Debtors' affiliates because the money necessary to fund consumer loans made by the Debtor originate in the Disbursement Account.

    f. <u>Other Accounts</u>: Argon Credit also maintains two additional accounts at Schaumburg Bank & Trust: (i) an investor account which is currently inactive and holds *de minimus* funds and (ii) an account which was used when Argon Credit used to service loans owned by Spartan Specialty Finance, but is currently inactive and holds *de minimus* funds.

13.     The Debtors accept borrower payments into the Lockbox Account to avoid the receipt of physical payment devices (cash, checks, RCC transfers, etc.) to its office. Further, the Debtors are not charged for payment reversals in relation to dishonored payments delivered to the lockbox. Because these physical payment devices are being handled by Schaumberg Bank & Trust, an organization designed specifically to handle the receipt and processing of payment devices, the Debtors benefit in reducing errors in back-office cash flows and reducing staffing demands. The Debtors reconcile cash receipts on a daily basis and perform systematic reconciliations of all of the deposits and debits in the Cash Management System.

14.     A flow cart of the Debtors' cash flows is as follows:



15.     The Debtors' transition into Chapter 11 will be significantly less disruptive if the above described bank accounts and Cash Management System are maintained following the commencement of these cases.  Due to the volume of transactions to which the Debtors are a party, their back-office systems are, to a large degree, fully automated.  As a result of this automation, and because bank routing information already provided to the Debtors' borrowers and third party processors, and for the reasons further noted below, the Debtor's operations, and therefore their

7

reorganization, would be materially prejudiced should it not be authorized to maintain its existing system of bank accounts and Cash Management System.

16. The Debtors further request authority to deposit funds into, and withdraw funds from, all such accounts, subject to the same access rights and limitations existing prior to the Petition Date, including, but not limited to checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, and other debits and to treat the all Bank Accounts held by the Debtors for all purposes as debtor-in-possession accounts.

**B.    United States Trustee's Operating Guideline and use of Existing Business Forms and Checks**

17. Operating Guidelines and Financial Reporting Requirements for Debtors-in Possession and Trustees (the "**U.S. Trustee Guidelines**") established by the United States Trustee's Office (the "**U.S. Trustee**") impose certain requirements on, and make recommendations to debtors-in-possession for the administration of Chapter 11 cases. These guidelines require debtors-in-possession to, among other things: (a) close all existing bank accounts and open a new debtor-in-possession account, (b) obtain checks for all debtor-in-possession accounts that have the designation "debtor-in-possession," the bankruptcy-case number, and the type of account, and (c) create a debtor-in-possession account designated solely for tax obligations. According to the U.S. Trustee, these requirements are designed to provide, among other things, a clear demarcation between prepetition and post-petition transactions and operations, which would, in theory, prevent the inadvertent post-petition payment of a prepetition claim.

18. In the ordinary course of business, the Debtors use pre-printed check stock with the relevant Debtors' name printed thereon. In addition, the Debtors maintain pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, promotional materials, and other business forms (collectively, along with the Debtors' checks, the

8

"**Business Forms**"). To minimize administrative expense and delay, the Debtors request authority to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtor-in-Possession" status.

## Relief Requested

19. By this Motion, the Debtors respectfully requests that the Court order the following relief

(a) The Debtors are authorized to, but not directed to (i) continue using, with the same account numbers, the Bank Accounts already in use in their Cash Management System; and (ii) otherwise continue operating their Cash Management System in a manner consistent with its prepetition practice among the Bank Accounts.

(b) Any and all of Princeton's or any other lender's dominion and control over the Bank Accounts, specifically including, without limitation, the Disbursement Account, the Operating Account, the Lockbox Account and the Merchant Account, is immediately terminated. The Debtors should be the only entities entitled to dominion and control over the Bank Accounts during the pendency of this Bankruptcy Case. Therefore, in regards to any blocked account agreements or any other pre-Petition Date arrangements providing any dominion over any of the Bank Accounts to Princeton or any other lender and restore full dominion and control over those Bank Accounts to the Debtors.

(c) Schaumburg Bank & Trust is authorized, only upon the Debtors' direction, to maintain, service, and administer the Bank Accounts in the ordinary course of business on each account, except that Schaumburg Bank & Trust is not authorized to honor any check issued or dated prior to the Petition Date absent an order of this Court.

(d) The Debtor is authorized to, but not directed to use, in its present form, all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices) and other documents related to the Bank Accounts existing immediately before the Petition Date; provided, however, as soon as practicable after the Petition Date, the Debtor will note its status as a "debtors-in possession" on checks that are electronically printed.

## Basis for Relief Requested

**A.    Cash Management System**

20. As part of the requested relief, the Debtor seeks a waiver of the requirement to establish specific bank accounts, including the operation of *Debtor-in-Possession Accounts* ("**DIP Accounts**"). One provision of the Guidelines promulgated by the United States Trustee for the

Northern District of Illinois requires a Chapter 11 debtor-in-possession to open new bank accounts and close all existing accounts. This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. The Guidelines also require that the new bank accounts only be opened in certain financial institutions designated as authorized depositories by the United States Trustee.

21. Schaumberg Bank & Trust is not a depository authorized by the Office of the United States Trustee, and the Debtors therefore request this Court waive the requirement that their accounts be maintained at a financial institution designated as an authorized depository. Alternatively, to the extent the Bank Accounts are held at such a bank, the Debtors request that the Court authorize, but not require, the Debtors to seek to cause such bank or banks to execute a uniform depository agreement in a form prescribed by the Office of the United States Trustee within forty-five (45) days of the date of entry of an order authorizing this Motion, subject to the full reservation of rights of the United States Trustee if a uniform depository agreement is not executed.

22. As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments. The Debtors believe that tax obligations can be paid most efficiently out of the existing Bank Accounts, that the United States Trustee can adequately monitor the flow of funds into, among, and out of the Bank Accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

23. The Debtors hereby request authority to maintain the Bank Accounts and utilize them pursuant to the existing Cash Management System described above. The Debtors believe

that maintaining the existing Cash Management System will not prejudice any party-in-interest of their estates. If the relief requested herein is granted, the Debtors will not pay any debts incurred before the Petition Date unless specifically authorized by this Court.

24. Moreover, if the Debtors were forced to close their Bank Accounts, the Debtors expect that there would be disruption and confusion that would negatively impact their operations. For instance, funds may be deposited into the wrong account, misapplied, held in limbo, or otherwise delayed, thus negatively affecting the Debtors' relationships with parties who are necessary to the Debtors' restructuring efforts, and who already may be burdened by the filing of these cases. If the Debtors' bank accounts were changed, new routing information would have to be provided to the Debtors' thousands of borrowers, which would cause confusion and impact collections.

25. Furthermore, the interruptions to the Debtors' cash flow may give rise to instances where consumer loans are extended by the State Affiliates which cannot be funded, which may give rise to civil liabilities and penalties. As a result, the Debtors' submit that maintenance of the existing Bank Accounts and Cash Management System is warranted.

26. The Debtors believe that due to the fluid nature of its operations, the imposition of new accounts into its existing Cash Management System will cause systemic inefficiencies to develop. The Debtors believe that the United States Trustee, and any party in interest, will be able to adequately monitor the flow of funds into, throughout, and out of the Debtor's Cash Management System.

27. Courts in this district have allowed debtors to use their prepetition business forms without the "Debtor-In-Possession" label. *See, e.g., In re Edison Mission Energy*, Case No. 12-49219 (JPC)(Bankr. N.D.Ill. May 15, 2013); *In re Bridgeview Aerosol, LLC*, Case No. 09-41021

11

(PSH)(Bankr. N.D.Ill. Nov. 2, 2009); *In re XMH Corp. 1 (f/k/a/ Hartmarx Corp.)*, 09-02046 (BWB)(Bankr. N.D.Ill. Jan. 26, 2009).

28. Courts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.,* 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

29. Subject to Section 553 of the Bankruptcy Code, all banks and other financial institutions, including Princeton, that maintain the Bank Accounts or assert control over the same pursuant to loan agreements, should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in Section 101(5) of the Bankruptcy Code) of any such bank against the Debtors that arose before the Petition Date, absent further order of the Court.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title" and section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §§ 105(a) and 363(c)(1).  The purpose of these sections is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions

required to operate its business without undue oversight by creditors or the court. *See Medical Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997).

30. The Debtors' Cash Management System constitutes a customary and essential business practice that was created and implemented by the management of the Debtors in their exercise of its business judgment. Moreover, the Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtors in function, size, and complexity.

31. The Cash Management System is a practical mechanism that allows the Debtors the flexibility to collect loan payments made by its consumer borrowers, pay operational expenses, fund new loans, and otherwise meet the demands of its creditor pool. The Cash Management System also provides several important benefits, including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. All of these benefits will assist the Debtors in their efforts to maintain their operations pending the confirmation of a Chapter 11 plan or other disposition of their assets, making the relief requested herein appropriate under Section 105(a) of the Bankruptcy Code.

**B. United States Trustee's Operating Guideline and use of Existing Business Forms and Checks**

32. The Debtors believe that tax obligations can be paid most efficiently out of their existing Cash Management System, that the United States Trustee can adequately monitor the flow of funds throughout the Cash Management System, and that the creation of a debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

33. The Debtors request that this Court authorize them to use all correspondence and Business Forms existing immediately before the Petition Date without reference to the Debtors'

status as "debtors-in-possession."  As of the Petition Date, the Debtors had a large stock of Business Forms that they used in the ordinary course of business.  Reprinting their Business Forms to indicate that the Debtor is a "Debtor-in-Possession" would impose an unnecessary burden and expense on the Debtor.  There is little doubt that the parties with whom the Debtors do business will shortly become aware that it is a Chapter 11 debtor-in-possession.

C. **Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay**

34. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For reasons discussed above, authorizing the Debtors to (a) continue to operate the Cash Management System, (b) maintain existing business forms, and (c) continue to perform Intercompany Transactions consistent with historical practice as well as granting the other relief requested herein is integral to the Debtors' ability to transition their operations into this Chapter 11 case.  Failure to receive such authorization and other relief during the first 21 days of this Chapter 11 case would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Notice**

35. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee of the Northern District of Illinois; (b) counsel to the Debtors' prepetition lenders; (c) counsel to the Debtors' postpetition

lenders; (d) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (e) those parties requesting notice pursuant to Rule 2002; (f) the Office of the United States Attorney General for the Northern District of Illinois; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; and (i) each of the banks holding the Bank of Accounts set forth in **Exhibit "A"** hereto. As the Motion is seeking "first day" relief, within two (2) business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules. The Debtors submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

36. No prior request for the relief sought in this Motion has been made to this or any other court.

### Conclusion

WHEREFORE, the Debtors respectfully requests that this Court enter an order granting the relief requested herein and that it grant the Debtor such other and further relief as is just and proper.

    Respectfully Submitted,
    Argon Credit LLC and Argon X LLC, Debtors herein.

By: /s/ Matthew T. Gensburg
    One of their Attorneys

Matthew T. Gensburg (ARDC# 6187247)
E. Philip Groben (ARDC# 6299914)
DALE & GENSBURG, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone: 312-263-2200
Fax: 312-263-2242

15

Email: mgensburg@dandgpc.com
Email: pgroben@dandgpc.com