**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Argon Credit LLC<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 16-39654<br><br>Hon. _____ |
| In re:<br><br>Argon X LLC<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 16-39655<br><br>Hon. _____ |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on December 21, 2016 at 2:15pm, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Judge Deborah L. Thorne, Bankruptcy Judge, in Courtroom 613, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other Judge who may be sitting in her place and stead, and shall then and there present the **Debtors' Motion for Interim Authority to use Cash Collateral Pursuant to 11 U.S.C. §§ 363(c) and 363(e) and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure**, a copy of which is attached and hereby served upon you, at which time and place you may appear if you so see fit.

Dated: December 19, 2016　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　Argon Credit LLC and Argon X LLC,
　　　　　　　　　　　　　　　　　　　　　　　Debtors-in-possession herein.

　　　　　　　　　　　　　　　　　　　　By:　/s/ E. Philip Groben
　　　　　　　　　　　　　　　　　　　　　　　E. Philip Groben

Matthew T. Gensburg (ARDC# 6187247)
E. Philip Groben (ARDC# 6299914)
DALE & GENSBURG, P.C.
200 West Adams Street, Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242
Email: mgensburg@dandgpc.com
Email: pgroben@dandgpc.com

# **CERTIFICATE OF SERVICE**

STATE OF ILLINOIS    )
                     )    SS
COUNTY OF COOK       )

E. PHILIP GROBEN, being first duly sworn on oath, deposes and stated that he served a copy of the foregoing Notice together with a copy of the Motion attached thereto on the persons named below, by either service through CM/ECF, facsimile, FedEx Overnight, or as otherwise indicated, on December 19, 2016.      BY: /s/ E. Philip Groben

Attorney General for the State of Illinois
Attn: Bankr. Section
500 S. 2nd Street
Springfield, IL 62701
Via Fax: (217) 785-2551

Illinois Department of Revenue
Attn: Bankr. Section
100 West Randolph St.
Chicago, IL 60601
Via Fax: (217) 782-6337

Internal Revenue Service
Centralized Insolvency
PO Box 7643
Philadelphia, PA 19101-7346
Via Fax: (855) 782-6337

United States Attorney of the
Northern District of Illinois
Attn: Bankruptcy Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
Via Fax: (312) 353-2067

United States Trustee for the
Northern District of Illinois
219 S. Dearborn St., Rm. 873
Chicago, IL 60604
Via Fax: (312) 886-5794
Via CM/ECF

Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
Via Email: secbankruptcy@sec.gov
Via Fax: (202) 772-9265

Addison Professional Financial
7076 Solutions Center
Chicago, IL 60677
Via FedEx Overnight
Via Fax: (312) 424-0900

B Money Holdings
2569 College Hill Circle
Schaumberg, IL 60173
Via FedEx Overnight

Broadmark Capital LLC
600 University St., Ste. 1800
Seattle WA 98101
Via FedEx Overnight

Budd Larner, P.C.
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
Via Fax: (973) 379-7734

DevBridge Group, LLC
343 W. Erie St., Ste. 600
Chicago, IL 60654
Via Fax: (312) 277-1068

Enova International, Inc.
175 W. Jackson Blvd., Ste. 1000
Chicago, IL 60604
Via Fax: (312) 268-6465

Fintech Financial, LLC
Attn: Mindi Park
101 Research Park Dr.
Mission, SD 57555
Via FedEx Overnight

Gallop Solutions, Inc.
P.O. Box 796575
Dallas, TX 75379
Via Fax: (610) 910-3476

InContact
7730 S. Union Park Ave., Ste. 500
Sal Lake City, UT 84047
Via FedEx Overnight

LendingTree
PO Box 840470
Dallas, TX 75284
Via FedEx Overnight

Meghan Hubbard
760 Village Center Dt., Ste. 200
Via Burr Ridge, IL 60527
Via FedEx Overnight

Merit Management Group
760 Village Center Dr.
Burr Ridge, IL 60527
Via Fax: (630) 455-4646

Peraza Capital and Investment
111 2nd Ave. NE Ste. 705
Saint Petersburg FL 33701
Via Fax: (767) 821-4373

Percolate Industries
107 Grand St., 2nd Floor
New York, NY 10013
Via FedEx Overnight

Productive Edge LLC
11 E. Illinois St., Ste. 200
Chicago, IL 60611
Via FedEx Overnight

Robert Half
12400 Collections Center Dr.
Chicago, IL 60693
Via FedEx Overnight

RSM
5155 Paysphere Circle
Chicago, IL 60674
Via FedEx Overnight

Swoon
8474 Solution Center
Chicago, IL 60677
Via FedEx Overnight

Yodlee/Envestnet
35 E. Wacker Pl., Ste.  2400
Chicago, IL 60601
Via Fax: (650) 980-3845

Velocify
Attn: Billing Dept.
222 N. Sepulveda, 18th. Floor
El Segundo, CA 90245
Via Fax: (310) 988-1855

Fund Recovery Services, LLC
Attn: Franklin Levin, Esq.
100 Canal Pointe Blvd., Ste. 208
Princeton, NJ 08540
Via FedEx Overnight
Via CM/ECF


/s/ E. Philip Groben

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Argon Credit LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 16-39654<br><br>Hon. _____ |
| In re:<br><br>Argon X LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 16-39655<br><br>Hon. _____ |

**EMERGENCY JOINT MOTION OF ARGON X LLC AND ARGON CREDIT, LLC
FOR INTERIM AUTHORITY TO USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. §§ 363(c) AND 363(e) AND RULE
<u>4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

ARGON X LLC and ARGON CREDIT LLC, debtors and debtors-in-possession (the "**Debtors**"), by and through their attorneys, Matthew T. Gensburg, E. Phillip Groben and Dale & Gensburg, P.C., respectfully submit this motion for interim authority to use cash collateral pursuant to 11 U.S.C §363 of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and to schedule this matter for a final hearing (the "**Motion**"). In support of the Motion, the Debtors respectfully state the following:

   I.   **<u>EXECUTIVE SUMMARY</u>**

   1.   The Debtors are requesting that the Court authorize the use of Cash Collateral on an interim basis and schedule the matter for a final hearing. The Debtors anticipate the need to use Cash Collateral pursuant to the budget attached as **<u>Exhibit A</u>**[1] (the "**Budget**"). Without the

---

[1] This Motion incorporates by reference all information contained in the Budget attached hereto as **<u>Exhibit A</u>**.

1

immediate use of Cash Collateral, the Debtors would likely have to cease operations, which would result in a loss of jobs for the Debtors' 29 employees, and would greatly reduce the value of the Debtors' business and assets, as well as the value of their wholly-owned affiliates. The relief requested is necessary for the Debtors to: (a) continue the operation of its business as debtor-in-possession; (b) preserve the going-concern value of its operations and assets; and (c) preserve the jobs of approximately 29 employees. Unless the Debtors are immediately authorized to use Cash Collateral in the amounts identified in the Budget, the Debtors will suffer immediate and irreparable harm.

2. As noted in more detail below, Fintech Financial, LLC ("**Fintech**") and Princeton Alternative Income Fund, LP ("**Princeton**," and collectively with Fintech, the "**Senior Lenders**") assert liens in substantially all the Debtors' assets existing as of the Petition Date.[2] To the extent the Senior Lenders' liens are valid and perfected, the Senior Lenders are adequately protected in connection with the Debtors' use of Cash Collateral and the continued operations of the Debtors' business by an equity cushion in the Collateral of the Senior Lenders. Additionally, the Interim Budget four week budget provides for an adequate protection payment of $350,000.00 to the Senior Lenders. Further, the costs and expenses, reflected on the Budget, represent those necessary costs required to service and preserve the value of the consumer loans which make up the bulk of Senior Lenders' collateral. The Debtors propose additional adequate protection, to the extent of a diminution of value, by providing the Senior Lenders with replacement liens on any accounts, and new consumer loans acquired or generated by the Debtors in the ordinary course of their business operations after the Petition Date, specifically including the cash proceeds arising from such accounts and consumer loans acquired or generated by the Debtors after Petition Date. Such

---

[2] At this time, the Debtors are not prepared to stipulate, and do not stipulate, as to the validity or perfection of the Senior Lenders' alleged liens for the purposes of an interim order.

2

replacement liens will be in the same nature, extent, priority, and validity that the Senior Lenders' liens, if any, existed on the Petition Date.

3. The Debtors' use of the Cash Collateral is required to cover the necessary costs and expenses incurred in both servicing the loans acquired and generated by the Debtors and maintaining the integrity of the collateral, and will generate the revenue required to allow the Debtors to the continue to operate, while working to restructure their indebtedness and rehabilitate and improve on their relationship with vendors, service providers and related parties in interest. The Debtors seek to use Cash Collateral to fund working capital, operating expenses, fixed charges, payroll, and all other general corporate purposes arising in the Debtors' ordinary course of business, consistent with and in compliance with the Budget, and to pay the costs and expenses related to the administration of the Debtors' bankruptcy case, including reasonable professional fees and certain other expenses as contemplated in the Budget, and as set forth applicable Interim and/or Final Orders.

  **II.** **JURISDICTION AND VENUE**

4. On December 16, 2016 (the "**Petition Date**"), the Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned bankruptcy cases and creating the bankruptcy estates (the "**Estates**"). This Court has jurisdiction over this Chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue is proper in this District pursuant to 28 U.S.C §§ 1408 and 1409.

5. The Debtors are each operating as a debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No Trustee, examiner or statutory committee has been appointed in either Chapter 11 case.

### III. BACKGROUND

#### A. Nature of the Debtor's Business.

6. Organized under the laws of the State of Delaware, the Debtor was founded in May of 2014. In conjunction with its affiliates, the Debtor operates a domestic based online lending platform specializing in near-prime consumer installment loans. The Debtor's customer base is the large near-prime population which is an underserved community with limited access to credit. The Debtor, through its non-debtor affiliates, Argon Credit of Alabama LLC, Argon Credit of California LLC, Argon Credit of Georgia LLC, Argon Credit of Illinois LLC, Argon Credit of Louisiana LLC and Argon Credit of Utah LLC (collectively, the "**State Affiliates**"), operates on a state-by-state licensing model, providing vital liquidity and access to credit. To date, the Debtor through its affiliates has originated over $50 million in consumer installment loans.

7. The Debtor offers an alternative for borrowers seeking convenient and affordable personal loans. Its loans involve level fixed-payments and are closed end and fully amortizing. The Debtor's loans are unsecured, funded up to $35,000, carry interest rates of between 19% and 95%+ and have a two to four year term. The Debtor's underwriting process is both an automated and manual. All applications are taken through the Debtor's website, Argoncredit.com. The Debtor has an automated decision making engine that declines an applicant if any of three credit-related scores do not reach a minimum value. If the applicant passes the automated algorithm, then their application is submitted to the underwriting and verification team for manual review. Each applicants' credit report is reviewed for anomalies, e.g., bankruptcies and tax liens.

#### B. Intra-Company Transactions.

8. The Debtor's consumer loan portfolio is generated by the State Affiliates. Through a *Support and Servicing Agreement*, Argon Credit LLC ("**Argon Credit**") now (i) provides pre-

4

servicing support and administrative services in furtherance of the State Affiliates' business of originating consumer loans and (ii) services the consumer loans until they are sold. Argon Credit's pre-servicing support and administrative duties include (a) assistance with any licensing needs of the State Affiliates; (b) assistance with the creation of loan documents, disclosures and other documents and processes necessary for the State Affiliates to originate consumer loans; (c) providing leads to consumers who may be interested in obtaining consumer loans; (d) underwriting, and (e) the creation of electronic records. Additionally, the Argon Credit (f) collects all payments due under each consumer loan when the same become due and payable; (g) provides an analysis of the consumer loans and identifies loans eligible for sale; (h) with respect to any loan which is in default, undertakes appropriate collection procedures, or pursues appropriate modifications or restructuring consistent with the State Affiliates' directions.

9. Pursuant to a *Master Consumer Loan Purchase Agreement*, the State Affiliates periodically sell to the Debtor their portfolio of eligible consumer loans. The purchase price for each consumer loan is equal to one hundred percent (100%) of the outstanding unpaid balance of the eligible consumer loans set for on a consumer loan schedule transmitted to the Debtor. The Debtor, therefore, ultimately owns and is entitled to receive with respect to the consumer loans (1) all payments of principal and all other recoveries of payments received, (2) all payments of interest, and (3) all late fees and other ancillary fees collected on the related consumer loan.

10. Pursuant to a separate *Servicing Agreement*, the Argon Credit also provides the Debtor with both pre-servicing support and administrative services for the consumer loans it acquires. These services include collecting payments due under the consumer loans, and providing all statements, reports and records required the Debtor's lender.

11. The Debtor filed this bankruptcy case following problems with a prior loan servicer, which resulted in a substantial decrease in collections and a deterioration in loan performance. Argon Credit took back the loan servicing function, which has resulted in a dramatic improvement in loan collections. However, despite a rise in collections, liquidity issues forced the Debtor to miss a debt serve payment in December, triggering an event of default under the Debtor's revolving credit agreement with the Fintech. The Debtor needs the brief breathing spell provided by this bankruptcy case to restructure its indebtedness to the Senior Lenders and vendors and preserve value for all stakeholders. During the breathing spell, the Debtor must use cash collateral to avoid immediate and irreparable harm. The Debtor intends to use this bankruptcy case to stabilize operations, preserve value for all stakeholders, and prove to its vendors that it can still (a) operate profitably and (b) maximize the payback on their existing credit exposure.

### C. Pre-Petition Date Credit Facilities.

12. On May 1, 2015, the Debtor entered into a *Loan and Security Agreement* with Fintech, which provided the Debtor a revolving line of credit with a maximum revolving loan limit of $20,000,000.00 (the "**Loan Agreement**"). Under the terms of the Loan Agreement, the Debtor granted Fintech a security interest in certain of the Debtor's personal property, specifically including, without limitation, receivables, collections, instruments, accounts, contract files, pledged accounts, general intangibles, goods, chattel paper, documents, letters of credit, banker's acceptances and similar instruments, investment property, commercial tort claims, and products and proceeds of the foregoing.

13. On May 6, 2015, Fintech and Princeton entered into a *Master Assignment of Loans* agreement whereby Fintech agreed to sell, assign and transfer to Princeton all of its rights, title and interests in and to each loan referenced in Loan Schedules from time to time executed by

6

Fintech, as well as Fintech's rights and remedies under the Loan Agreement and all of Fintech's interest in the collateral thereof.

14. On September 30, 2015, the Debtor and Fintech entered into that certain *First Amendment to Loan and Security Agreement and Modification to Other Financing Agreements* (the "**First Amendment**"). Pursuant to the First Amendment, among other changes, the maximum credit available to the Debtor under the Loan Agreement was increased from $20,000,000.00 to $34,000,000.00. On February 8, 2016, the Debtor and Fintech entered into the *Second Amendment to Loan and Security Agreement and Modification to Other Financing Agreements* (the "**Second Amendment**"). Pursuant to the Second Amendment, among other changes, the maximum credit available to the Debtor under the Loan Agreement was increased again to $37,500,000.00.

15. The Senior Lenders assert a lien on substantially all of the Debtor's assets exiting as of the Petition Date and cash proceeds arising therefrom acquired by the Debtor after the Petition Date. Except for its loan payment due on or about December 8, 2016, the Debtor has paid all monetary obligations arising in connection with the credit facility evidenced by the Loan Agreement.

16. In addition, Margon, LLC (the "**Junior Lender**") has made loans to Argon Credit as evidenced by certain notes and other documents, instruments and agreements. On information and belief, the loans of the Junior Lender are secured by the assets of Argon Credit. Pursuant to a *Subordination Agreement* dated May 1, 2015, by and among Fintech, Argon Credit, Argon X, their State Affiliates and the Junior Lender, any security interest of the Junior Lender is subordinate to the interests of the Senior Lenders.

### IV. RELIEF REQUESTED

17. By this Motion, pursuant to 11 U.S.C. §§ 105, 361, and 363, and Bankruptcy Rules 4001 and 6004, the Debtor seeks, among other things, the following:

    a. Pursuant to Bankruptcy Rule 4001, scheduling of an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of the proposed Interim Order attached hereto as **Exhibit B**;

    b. Pursuant to the Interim Order, authorization for the Debtors to use the Senior Lenders' and Junior Lender's Cash Collateral and the granting of adequate protection to the Senior Lenders and Junior Lender for, among other things, such use of Cash Collateral and all use and diminution in value of the Senior Lenders' and Junior Lender's pre-Petition Date collateral; and

    c. Scheduling of a final hearing (the "**Final Hearing**") to consider entry of a Final Order authorizing the use of the Senior Lenders' and Junior Lender's Cash Collateral.

### V. BASIS FOR EMERGENCY RELIEF

18. The Debtors bring this Motion on an emergency basis given the immediate and irreparable harm that the Debtors will potentially suffer if they are denied the ability to use Cash Collateral, which is necessary to sustain their ongoing business operations and achieve their future business objectives. The use of Cash Collateral will permit the Debtors to, among other things, preserve the value of the Estates, continue operations, maintain jobs for at least 29 employees, service ongoing disbursements, and satisfy other working-capital and needs of its day-to-day functions.

19. Absent immediate use of Cash Collateral, the Debtors would likely have to cease business operations to the material detriment of creditors, vendors, suppliers, employees,

stakeholders and other partied in interest. Therefore, the Debtors need to ensure the availability of such working capital now. This liquidity is necessary for the Debtors to reorganize and demonstrate to their customers, suppliers, vendors, and stakeholders that they have sufficient capital to ensure ongoing operations.

VI. **APPLICABLE AUTHORITY**

    A. **Adequate protection and Cash Collateral**

20. The Debtors' use of property of its estate is governed by Section 363 of the Bankruptcy Code, which provides in pertinent part that a debtor in possession "may use property of the estate in the ordinary course of business without notice of a hearing." 11 U.S.C. §363(c)(1). Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or court approval. *See* 11 U.S.C. §363(c)(2). Section 363(e) of the Bankruptcy code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. *See* 11 U.S.C. §363(e).

21. Section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of what may constitute adequate protection under §363: (1) periodic cash payments; (2) additional or replacement liens; or (3) any other relief that will result in the party's realization of the "indubitable equivalent" of its interests in the property. The determination of whether there is adequate protection requires a fact-specific inquiry and is decided on a case-by-case basis. See *In re EES Lambert Assocs.,* 62 B.R. 328, 343 (Bankr.N.D.Ill.1986); *In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir.1987); *In re Martin,* 761 F.2d 472 (8th Cir.1985); *In re Energy Partners, Ltd.,* 409 B.R. 211, 236 (Bankr.S.D.Tex.2009), *In re Mosello,* 195 B.R. 277, 289 (Bankr.S.D.N.Y.1996); *In re Realty Southwest Assocs.,* 140 B.R. 360 (Bankr.S.D.N.Y.1992); *In re Beker Indus. Corp.,* 58 B.R.

9

725 (Bankr.S.D.N.Y.1986). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Central Park Avenue Corp.,* 136 B.R. 626. 631 (Bankr.S.D.N.Y.1992); *In re Beker,* 58 B.R. at 736; *In re Hubbard Power & Light,* 202 B.R. 680 (Bankr.E.D.N.Y.1996). Further, in order to facilitate the likelihood of reorganization, courts should be flexible in the application of the adequate protection standard. See *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (10th Cir.1984) (explaining that the Bankruptcy Code attempts to balance the protection of a secured creditor's property interests against a debtor's need to use cash in order to meet daily operating expenses and promote the "congressional policy favoring rehabilitation over economic failure").

22.     The Senior Lenders assert senior liens, respectively, on Cash Collateral. As adequate protection for the Debtors' use of the Senior Lenders' Cash Collateral, as well as any security interest of the Junior Lender, the Debtors are proposing to provide the Senior Lenders and Junior Lender with the following forms of adequate protection ("**Adequate Protection**"), to the extent of any diminution in value of the Senior Lenders' and Junior Lender's pre-Petition Date security interest in the Senior Lenders' and Junior Lender's pre-Petition date collateral, if any.

- <u>Partial Interest Payments</u>. After the Petition date and until such time as the Debtors no longer use the Senior Lenders' Cash Collateral, the Debtors propose to deliver to the Senior Lenders timely and current monthly payments of $350,000.00 toward accrued interest at a non-default rate.

- <u>Equity Cushion</u>. The Debtors assert that the Senior Lenders are over-secured by an amount sufficient to constitute adequate protection, because that cushion exceeds the amount, if any, of diminution in value during the Budget period. An equity

cushion exists in the consumer loan portfolio which secures the claims of the Senior Lender. The gross present value of the future cash receipts of the loan portfolio is in excess of $36,500,000.00. In addition, the Debtors' list of "leads" has a value in excess of $5,500,000.00 and their lending platform and infrastructure has a value, measured at costs, of at least $2,500,000.00.

- <u>Replacement liens</u>. The Senior Lenders and Junior Lender will be granted, from and after the Petition Date, valid and automatically perfected (without necessity of the execution by the Debtors of additional security agreements, pledge agreements, financing statements, or other documents) replacement liens and security interests in all tangible and intangible personal property acquired by the Debtors after the Petition Date, specifically including all cash proceeds arising from such property, in the same nature, extent, priority and validity that such liens, if any, existed on the Petition date. The post-petition cash proceeds would not otherwise be subject to the Senior Lenders' liens post-petition. *See In re Cafeteria Operators, L.P.*, 299 B.R. 336-37 (9th Cir.BAP 2004) (holding that "a creditor's security interest only encompasses the cash collected on existing pre-petition accounts" and that receivables from post-petition accounts were not "proceeds" under section 522(b)).

23. The proposed Adequate Protection, outlined hereinabove and set forth in the Interim Order, is sufficient to secure the Debtors' projected use of Cash Collateral, as set forth in the Budget, because the projected diminution in value, if any, from the use of Cash Collateral is less than the value of the Adequate Protection proposed to the Senior Lenders. Further, the use of Cash Collateral is itself a form of adequate protection, as the only way to preserve the value of the consumer loans which represent the bulk of the Senior Lenders' collateral is to continuously and

actively service those loans in order to maintain their collectability. In other words, an interruption in loan servicing will dramatically impact the collectability of the asserted debts. The use of Cash Collateral also preserves the value of the Debtors' infrastructure and operations as a going concern, which will have minimal value in a liquidation scenario.

### B. The Use of Cash Collateral is Necessary to Preserve Assets of the Estate

24. It is essential that the Debtors immediately instill their vendors, suppliers, service providers and customers/borrowers with confidence in its ability to transition its business smoothly through the Chapter 11 process and to operate normally in that environment. The use of Cash Collateral is necessary to continue relationships with the Debtors' vendors, suppliers and service providers, and also to satisfy actual or pending necessary working requirements for the Debtors' business.

25. The initial success of this Chapter 11 case and the stabilization of the Debtors' operations at the outset thereof depends on the confidence of the Debtors' vendors, service providers, and customers/borrowers, which in turn depends on the Debtors' ability to minimize the disruption to its business due to the bankruptcy filing. If the relief sought in this Motion is delayed or denied, the necessary parties' confidence may be shattered, consequently damaging the Debtors' ability to preserve value for the Estates. In contrast, once the use of Cash Collateral is approved and implemented, the Debtors' ability to continue functioning normally will be reasonably assured. Thus, the Debtors submit that the need for authorization to use Cash Collateral is immediate.

26. As mentioned above, the Debtors have attached a proposed Budget as **<u>Exhibit A</u>** to this Motion. Debtors hereby seek to use Cash Collateral in accordance with that Budget up to a

variance of 10% of total disbursements on a cumulative basis. If the use of Cash Collateral is not authorized, the Debtors will suffer immediate and irreparable harm.

### C.    Interim Approval Should Be Granted

27. Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced before 14 days after service of that motion. Fed. R. Bankr. P. 4001. This Court may, however, conduct a preliminary hearing before the expiration of that fourteen-day period and likewise authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to the Debtors' Estates.

28. In examining requests under this Bankruptcy Rule, Courts apply the same business-judgement standard as is applicable to other business decisions. See *In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 38 (Bankr.S.D.N.Y.1990). The Debtors submit that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtors' business and the Estates.

29. The Debtors request that the Court conduct an emergency preliminary hearing on the Motion and authorize the Debtors, from and after the entry of the Interim Order until a Final Hearing is held on the relief requested herein, to use Cash Collateral as necessary. Such authorization will ensure that the Debtors maintain ongoing operations and avoid immediate and irreparable harm and prejudice to the Estates and all parties in interest pending the Final Hearing.

### D.    Request for Final Hearing

30. As noted above, pursuant to Bankruptcy Rules 4001(b)(2), the Debtors respectfully request that the Court set a date for the Final Hearing at the earliest date and time of the Court's convenience that will ensure adequate notice and due process to all parties-in-interest to this bankruptcy case.

13

31. The Debtors respectfully request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the Notice Parties (as defined below) and to any other party that has filed a request for notices with this Court and to any Committee, or Committee Counsel, if same shall have filed a request for notice. The Debtors respectfully request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

VII. **NOTICE**

32. No trustee, examiner or statutory creditors' committee has been appointed in this Chapter 11 Case. This Motion has been provided to: (i) the Office of the United States Trustee for the Northern District of Illinois; (ii) each of the Debtors' secured lenders including the Senior Lenders; (iii) counsel to the agents of the Debtors' secured lenders and Senior Lenders; (iv) the thirty (30) largest unsecured creditors of the bankruptcy Estates; (v) the Internal Revenue Service; and (vi) all parties in interest who have formally appeared and requested notice (the "**Notice Parties**"). The Debtors respectfully submit that no further notice of this Motion is required.

33. The pleadings in this Chapter 11 Case and supporting papers are available on the bankruptcy court's website at www.ilnb.uscourts.gov. You can request any pleading you need from (i) the proposed noticing agent at: _____ or (ii) counsel for the Debtors at: Dale & Gensburg, P.C., c/o Matt Gensburg, 200 West Adams Street, Suite 2425, Chicago, Illinois 60606 (mgensburg@dandgpc.com).

VIII. **NO PRIOR REQUEST**

34. No prior application for the relief requested herein has been made to this or any other court.

14

Wherefore, the Debtors respectfully request the entry of an order granting the relief requested herein, and granting such other and further relief as is just and proper.

        Respectfully Submitted,

        ARGON CREDIT LLC and ARGON X LLC,
        Debtors herein.

        */s/ Matthew T. Gensburg*
        Matthew T. Gensburg (ARDC# 6187247)
        E. Phillip Groben (ARDC# 6299914)
        **DALE & GENSBURG, P.C.**
        200 West Adams St., Ste. 2425
        Chicago, Illinois 60606
        Telephone: (312) 263-2200
        Facsimile: (312) 263-2242
        mgensburg@dandgpc.com
        pgroben@dandgpc.com

        **PROPOSED COUNSEL FOR DEBTOR**

P:\Clients\Argon\First Day Motions\Joint Motion to use Cash C\Argon JOINT EMERGENCY MOTION TO USE CASH COLLATERAL (v4).docx