UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                    )
                                          )    Chapter 7
ARGON CREDIT, LLC, *et al.*,              )
                                          )    Case No. 16-bk-39654
                                          )    Hon. Deborah L. Thorne
                                          )    Jointly Administered
                    Debtors.              )

## MEMORANDUM OPINION

Before the court is the disputed election of chapter 7 trustee Patrick J. O'Malley. Under 11 U.S.C § 702(b), Fund Recovery Services, LLC elected O'Malley over the objections of the interim trustee and two insider creditors. As explained below, the court finds that Fund Recovery Services was ineligible to vote because its interest is materially adverse to other creditors' interests.

### Factual Background[1]

Argon X, LLC ("Argon X") and Argon Credit, LLC ("Argon Credit") were in the business of making near-prime consumer loans. The loans were sourced through non-debtor affiliates, then purchased by Argon X and serviced by Argon Credit. Princeton Alternative Funds, LLC ("Princeton") provided Argon X with a line of credit for $37 million secured by the loan portfolio. Although it is not completely clear to the court, it appears that Argon Credit at a minimum guaranteed Argon X's obligation. On December 7, 2016, Princeton declared the loan in default and assigned it to Fund Recovery Services, Inc. ("FRS").[2] Before the default,

---

[1] This factual background does not constitute findings of fact.
[2] It is not clear to the court exactly how Princeton and FRS are related but, parties appear to agree that FRS is the successor in interest.

1

Princeton had already received several payments totaling about $1.2 million from Argon Credit on account of the debt.

Several days after the default, Argon Credit and Argon X filed voluntary petitions under chapter 11 of the Bankruptcy Code.[3] It is at this point that the dance between FRS and Debtors began. As a successor in interest, FRS filed a secured claim of $37 million in each case. FRS did not agree to the Debtors' request to use cash collateral and, after extensive hearings, this court denied the motion to use cash collateral. The Debtors converted their cases to chapter 7 and the UST appointed Deborah Ebner interim trustee. A short time later, Ebner resigned due to a conflict of interest. The UST then appointed Eugene Crane interim trustee. FRS amended its claims to reflect an unsecured claim in Argon Credit and a partially unsecured claim in Argon X.[4] It then elected a new trustee at the next 341 meeting.[5] Although Crane and two insider creditors, Little Owl Argon, LLC ("Little Owl") and Margon LLC ("Margon") objected, FRS, as the only voting creditor elected Patrick O'Malley. The UST reported the dispute to the court and this dispute is now ready for disposition.

### Discussion[6]

A qualified creditor, holding at least twenty percent of the claims, may call for a chapter 7 trustee election at a 341 meeting. 11 U.S.C § 702(b). Qualified creditors must (1) hold an allowable, undisputed, fixed, liquidated, unsecured claim, (2) not hold an interest materially adverse to the interest of creditors entitled to distributions, and (3) not be insiders. 11 U.S.C. §

---

[3] These cases are jointly administered.
[4] The court casts no aspersions on FRS' motive in amending its claims but these amendments did allow FRS to participate in the election because it held over twenty percent of the claims and an unsecured claim in Argon Credit and a partially unsecured claim in Argon X.
[5] Fed. R. Bankr. P. 2009(a) (Creditors may elect a single trustee for the estates being jointly administered)
[6] The court has subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1334(a) and § 157(a) and the Northern District of Illinois' LR40.3.1. These matters are core proceedings under 28 U.S.C. § 157(b)(2)(A).

2

702(a). To vote in the election, the creditor must file a proof of claim or a writing demonstrating that it has met the requirements under section 702(a). Fed. R. Bankr. P. 2003(b)(3). The UST tabulates the votes and files a report in the event of a dispute. *Id*. Unless a party files a motion for resolution of the dispute, the interim trustee becomes the permanent trustee. Fed. R. Bankr. P. 2003(d)(2). In the event of such motion, the election objector bears the burden of proof.[7]

Here, FRS filed proofs of claims in both cases prior to the election. Eugene Crane, Little Owl, and Margon objected to FRS' right to vote.[8] Accordingly, the UST filed a report of disputed election. FRS now asks the court to resolve the dispute. The objectors raise several arguments to support the theory that FRS was not eligible to vote. The court only needs one. Due to the credible allegations of preference liability, the court finds FRS' interest materially adverse to other creditors.

The Bankruptcy Code does not define a material adverse interest. The court must look outside the Code for guidance. Merriam-Webster defines adverse as "acting against or in a contrary direction." By this definition, most creditors have an adverse interest. The court would not be remiss in assuming that the majority of creditors want to maximize their interests with little to no thought given to any other estate interest. But, the inquiry does not end here. Section 702 requires a finding of *material* adversity. A creditor's interest is materially adverse when, "[a]t the time of the election, a creditor [has] the prospective ability to enhance its recovery at the estate's expense." *In re Klein*, 119 B.R. 971, 974-975 (N.D. Ill. 1990). Hence, courts tend to agree that potential preference liability often rises to the level of material adversity. *In re*

---

[7] *In re New York Produce Am. & Korean Auction Corp.*, 106 B.R. 42, 47 (Bankr. S.D.N.Y. 1989); *In re Poage*, 92 B.R. 659, 665 (Bankr. N.D. Tex. 1988).
[8] Standing is not an issue in this case because neither 11 U.S.C. § 702 nor Fed. R. Bankr. P. 2003(b)(3) specify who may object to an election. It follows that because any party in interest may object to a claim under 11 U.S.C. § 502, the same principle follows for objecting to a creditor's eligibility to vote. Crane, Little Owl and Margon are all parties in interest and may dispute the election.

*Amherst Technologies, LLC,* 335 B.R. 502, 508 (Bankr. D.N.H. 2006) (collecting cases); *In re Lang Cartage Corp.*, 20 B.R. 534, 536-37 (Bankr. E.D. Wis. 1982). The court adopts this viewpoint.

Under section 547(b), which provides for recovery of preferential transfers, a trustee may recover certain payments made to a creditor within 90 days of the bankruptcy.[9] If a voting creditor is also a potential preference defendant, then that creditor may not want the trustee to maximize value to the estate at its expense. "The participation of a potential preference defendant in choosing the trustee who will investigate, prosecute and settle any preference claim against it creates at least the appearance of impropriety." *Amherst,* 335 B.R. at 508. Trustees are to ensure a transparent recovery and administration of estate assets. Consequently, credible allegations of preference liability will almost always provide cause for a finding of a material adverse interest unless the preference amount is negligible.

Here, Crane alleges that Argon Credit made several preference payments totaling around $1.2 million to Princeton, an insider and potential alter ego of FRS. While FRS challenges these allegations as "unsupported speculation and nothing more," Crane provides an excerpt from Argon Credit's general ledger, listing the transfers to Princeton and relevant dates. Crane does

---

[9] 11 U.S.C. § 547(b) provides:
Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property— (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case was a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

not have to definitively prove FRS' preference liability at this stage. The objection need only to have a sufficient basis to rise above the mere suspicion threshold. *Amherst*, 335 B.R. at 509 (citing *In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978, 983 (Bankr. S.D. Cal. 1996)). The evidence before the court establishes a sufficient basis concerning FRS' preference exposure. The possibility of this preference liability demonstrates that FRS' interest is materially adverse to other unsecured creditors, disqualifying it from voting in the trustee election.[10]

## Conclusion

For the foregoing reasons, the court resolves the disputed election in favor of the objectors. FRS' potential preference liability makes it materially adverse to other creditors' interest which disqualifies it from voting. Thus, the interim trustee, Eugene Crane, will serve as the permanent trustee in these cases.

Dated: July 6, 2017

_____
DEBORAH L. THORNE
UNITED STATES BANKRUPTCY JUDGE

---

[10] This court is aware of allegations that FRS engaged in other questionable activities that may support a finding of material adverse interest, although the court makes no such finding at this point. For example, FRS attempted to offer litigation funding in exchange for a fully allowed claim. FRS also appears to have repeatedly amended their proofs of claims to its advantage without providing additional documentation in support of the amendments. *See* Fed. R. Bankr. P. 3001(c), (d), (f) (a properly filed proof of claim must include support documents.) Lastly, FRS is an adverse target in potential lender liability claims including breaching the commitment to provide a $75 million line of credit, barring debtors from making new loans and foisting upon debtors an incompetent loan servicer.