IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | Case No. 16-39654 |
| | ) | |
| Argon Credit, LLC, et al., | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Hon. Deborah L. Thorne |
| | ) | (Jointly Administered) |

## MEMORANDUM OPINION

This matter comes before the court on the motion of Argon Credit, LLC and Argon X, LLC ("Debtors") for declaratory relief or a protective order. The Debtors' motion is granted. Because under the circumstances of this case the only possible § 341(a) meeting has been concluded, the Debtors have no obligation under § 343 to appear at the continued May meeting, it being a special meeting with its current purpose not requiring the Debtors' presence. Further, the court declines to order the meeting to be re-opened or re-convened under § 105 because such relief is not appropriate to carry out the provisions of the Bankruptcy Code under these specific circumstances. Thus, the Debtors need not appear at any continuation of the May meeting.

### Factual Background[1]

This case concerns a trustee in need of more information. It also concerns debtors who believe that they have provided enough already as well as counsel for the Debtors who will not be paid for any further services on behalf of the Debtors. The bankruptcy case was initially opened as a Chapter 11 proceeding, but on January 11 of this year was converted to a Chapter 7 liquidation following this court's ruling that the Debtors could not use their lender's cash

---

[1] For additional background, especially on the events leading up to the bankruptcy case, see the court's earlier opinion in this case on the trustee election issue. *In re Argon Credit, LLC*, 570 B.R. 70 (Bankr. N.D. Ill. 2017).

collateral. Immediately following that conversion, Deborah Ebner was appointed Chapter 7 trustee.

Ebner presided over the meeting of creditors on February 7, 2017. The Debtors appeared at the meeting through one of their officers, Howard Korenthal, previously hired as their chief restructuring officer ("CRO") on December 16, 2016, the date of their Chapter 11 filing. Between December 16, 2016, and February 7, 2017, Korenthal had undertaken various tasks, including cash planning, reporting to lenders, analyzing the potential sale of the business, managing any potential liquidation of the business, implementing cost reduction and liquidity improvement programs and developing management/employee programs to assist with any sale or liquidation.[2] Korenthal also reported to the Board of Directors, just as an ordinary officer would.[3]

The meeting was concluded the day after it was convened.[4] Following the meeting, Ebner was active in the case, making an initial report of counsel and asking to retain counsel, among other things. On April 17, 2017, however, Ebner resigned, citing a potential conflict of interest, and Eugene Crane was appointed successor trustee. Nothing regarding Ebner's conflict of interest potentially tainting the February 7, 2017 meeting of creditors has been raised by the parties in their pleadings on this matter.

Two days after Crane's appointment, notice was sent out indicating that the § 341(a) meeting had been reset for May 17, 2017.[5] The Debtors allege that they inquired and were informed by the United States Trustee that this was really a special meeting solely for allowing any interested parties to seek the election of a new trustee. The trustee counters that notice of any

---

[2] *See* Debtors' Appl. Employ 6, Docket No. 90.
[3] *Id.* Ex. A, at 1.
[4] Docket No. 99.
[5] Docket No. 148.

2

such special purpose was never given to anyone but the Debtors and/or FRS,[6] and that he thought (and still thinks) that the meeting was really going to be a traditional § 341(a) meeting. That meeting has been adjourned and continued since May, and the trustee has contended that the Debtors must appear to be examined.

The Debtors now request that this court rule that they have no obligation to appear at the new meeting owing to the fact that the § 341(a) meeting has been concluded, not adjourned,[7] with no party having objected to Ebner's status as trustee at that meeting. The new meeting, they contend, must be a special meeting under Fed. R. Bankr. P. 2003(f). The Debtors argue that this is because the Code and Rules allow for only *one* § 341(a) meeting with its concomitant § 343 requirement that the debtor appear to be examined. They argue alternatively that this new meeting cannot be a § 341(a) meeting because the new meeting is outside of the 21-40 day window (which expired in February) for calling a § 341(a) meeting. The trustee's argument seems to essentially hinge on whether Korenthal really represented the Debtors at the first meeting as an appropriate and knowledgeable officer regarding the Debtors' financial affairs and whether he, as successor trustee to Ebner, should be able to conduct a new examination of the Debtors at a new § 341(a) meeting. Both parties dispute further whether the court, under these circumstances, should order the concluded § 341(a) meeting to be reconvened or reopened under § 105.

With that in mind, the court turns to a discussion of the applicable law.

---

[6] FRS is the largest creditor in the case.
[7] *See In re Duncan*, 245 B.R. 538, 543 (Bankr. E.D. Tenn. 2000) (noting the clear difference between adjournment of a § 341 meeting and its conclusion).

## Discussion[8]

### I.   Under the Bankruptcy Code, the May meeting cannot constitute a § 341(a) meeting and thus the Debtors need not appear.

The Debtors first argue that the language of the Bankruptcy Code forecloses any new § 341(a) meeting because that meeting has been concluded and there has not been an intervening conversion resulting in a new order for relief. For the reasons that follow, the court agrees.

After the initial order for relief in this case, the United States Trustee was required to "convene and preside at a meeting of creditors" within a reasonable period of time, which the rules define as not fewer than 21 nor more than 40 days from the date of the order for relief. 11 U.S.C. § 341(a); Fed. R. Bankr. P. 2003(a). Initially, this case was filed as a Chapter 11 reorganization, and the meeting of creditors was set for January 31, 2017; however, on January 11, 2017, the case was converted to one under Chapter 7. This conversion constituted a new order for relief for § 341(a) purposes,[9] but it did not matter in this case because the originally scheduled § 341(a) meeting was never held. A new, required § 341(a) meeting was scheduled for February 7, 2017; it was held and concluded on February 8, 2017.

As a matter of statute, the debtor is *required* to appear only at § 341(a) meetings. 11 U.S.C. § 343; *see also In re Astri Inv., Mgmt. & Sec. Corp.*, 88 B.R. 730, 741 (D. Md. 1988) (noting that the § 341 meeting is the "only mandatory hearing" in Chapter 7 and 11 cases). The United States Trustee "shall" convene these § 341(a) meetings when, and only when, an order for relief in a case under the Bankruptcy Code is entered. *Id.* § 341(a). Thus, in a typical case,

---

[8] The United States Bankruptcy Court for the Northern District of Illinois has jurisdiction pursuant to 28 U.S.C. §§ 157 & 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper. 28 U.S.C. §§ 1408, 1409.

[9] 11 U.S.C. § 348(a) ("Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an *order for relief* under the chapter to which the case is converted.") (emphasis added).

4

there can be only one § 341(a) meeting to be convened and concluded[10] because there is only one order for relief. *See id.* § 301(b). In a case that is converted, however, there can be more than one meeting because the conversion constitutes a new order for relief. *Id.* § 348(a). The imperative "shall" kicks in again, and the United States Trustee must convene the § 341(a) meeting anew. *Id.* § 341(a); *see also F & M Marquette Nat. Bank v. Richards*, 780 F.2d 24, 25 (8th Cir. 1985); *In re Quillen*, 408 B.R. 601, 614–18 (Bankr. D. Md. 2009).

It would seem to follow from this reading of the plain language of the relevant statutes[11] that any meeting not mandatorily convened by the United States Trustee within a reasonable time following an order for relief is not a § 341(a) meeting, but rather a special meeting of creditors called under Rule 2003(f). This Rule provides that the United States Trustee "may," either at the request of a party or on its own initiative, call a "special meeting of creditors." *See* Fed. R. Bankr. P. 2003(f). Must the debtor appear unequivocally[12] for examination at a Rule 2003(f) meeting? It would seem not. Section 343 plainly and clearly applies only to meetings convened pursuant to § 341(a). 11 U.S.C. § 343 ("The debtor *shall* appear and submit to examination under oath at *the meeting of creditors under section 341(a)* of this title.") (emphasis added).

This reading does not come into conflict with the relevant purposes of the § 341(a) meeting, the "only mandatory hearing"[13] in a case, one of which is to enable "creditors and the trustee to gather information about the debtor's finances and act accordingly." *In re Vilt*, 56 B.R. 723, 725 (Bankr. N.D. Ill. 1986). There is nothing in this reading of the statute that prevents the

---

[10] A single meeting can of course be adjourned and continued through multiple sessions. Fed. R. Bankr. P. 2003(e).
[11] *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).
[12] *i.e.*, without notice that its presence is required.
[13] *Astri Inv.*, 88 B.R. at 741.

5

meeting from being adjourned and continued if parties in interest deem it appropriate to develop and gather the relevant information, nor is there anything in this reading that prevents objections from being made at the meeting to the adequacy of that information or to the competency of a debtor's representative.[14]

Here, the § 341(a) meeting was convened on February 7, 2017, and concluded, not adjourned, on February 8, 2017. Nobody disputed that Ebner was a proper trustee. The Debtors appeared through their Chief Restructuring Officer; no objections were made. The Debtors were present and available for examination under oath, meaning that the spirit or purpose of this mandatory hearing was complied with. When this meeting concluded on February 8, there could be no more mandatory § 341(a) meetings under the Code, because there could be no more orders for relief. *See* 11 U.S.C. § 706(a) (preventing this case from being re-converted back to a Chapter 11 case and potentially allowing a new order for relief).

---

[14]  Nor does this reading appear to conflict with the intent of Congress when it enacted the Code in 1978, replacing the Bankruptcy Act of 1898. *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'") (internal citations omitted). The few cases considering this point have noted the Code's divergence from the 1898 Bankruptcy Act, which provided for multiple meetings of creditors in the statute itself. *See In re Draisey*, 385 B.R. 274, 276 n.4 (Bankr. D. Minn.), *rev'd on other grounds*, 395 B.R. 79 (B.A.P. 8th Cir. 2008) ("The notion of a case necessarily having more than one meeting of creditors was a feature of the Bankruptcy Act of 1898, apparently abandoned by Congress in the mid–1970s when it structured the legal and procedural regime under the Code."); *In re Vance*, 120 B.R. 181, 184 (Bankr. N.D. Okla. 1990) ("The former Bankruptcy Act provided for a 'first' meeting of creditors early in the progress of each bankruptcy case, Act § 55(a), for optional interim meetings thereafter, Act § 55(d), and for a 'final' meeting in some cases, Act § 55(e). The present Bankruptcy Code continues to provide for *one meeting of creditors* 'within a reasonable time after' commencement of each case, 11 U.S.C. § 341(a), but lacks any provision for interim or final meeting.") (emphasis added).

While it might be contended that Congress, in the absence of any discussion in the legislative history as to this intended change, was not trying to alter this pre-Code practice, it seems reasonable to conclude that such a change was intended in light of the unambiguous statutory language and the lessened importance of such meetings under the Code. *See Dewsnup*, 502 U.S. at 419–20 ("Of course, where the language is unambiguous, silence in the legislative history cannot be controlling."); *Vance*, 120 B.R. at 184 (noting, in light of the various changes to bankruptcy practice made by the Code in 1978, that "the meeting of creditors has become a less urgent and pivotal event in bankruptcy administration than it once was").

The fact that the May meeting was noticed as a § 341(a) meeting is certainly interesting, but it would seem to make no difference under the Code. Owing to the previous analysis, it must be that the notice of this meeting was mislabeled. As the United States Trustee was under no statutory duty to call the meeting, it could not have been a § 341(a) meeting. If the purpose of this special meeting had been to examine the Debtors, then the Debtors would have had to have appeared through their representatives.[15] The court knows only that the trustee apparently thought that the meeting was a new § 341(a) meeting, which it could not have been, and that the Debtors had inquired and found out that the United States Trustee had apparently acted, as it has discretion to do,[16] to call a special meeting to hold a trustee election. *See* 11 U.S.C. § 703(a) (providing for a permissive election in the case of a trustee's resigning).

Therefore, the purpose of the May meeting not requiring the Debtors' presence, and § 343 having no application, the court concludes that the Debtors need not appear at any continuation of the May meeting.

## II. The court declines to order the February § 341(a) meeting re-opened or reconvened for the purpose of allowing an examination of the Debtors.

The court further concludes that § 105 has no application to the case at bar that would alter this result. Section 105 provides that the court may issue any order that is appropriate to carry out the provisions of the Bankruptcy Code. *See id.* § 105(a). It seems likely that, given the right circumstances, § 105 could be used to re-open or re-convene a previously concluded § 341 meeting. Those circumstances, however, do not seem to be present here.

---

[15] Indeed, Collier notes that the open-ended authority provided by R. 2003(f) can "allow the United States trustee to bring the debtor before the general body of creditors as the need arises." 9 COLLIER ON BANKRUPTCY, ¶ 2003.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).
[16] *See* Fed. R. Bankr. P. 2003(f) ("may call").

7

The current trustee contends that his duties require him to be able to examine the Debtors,[17] that he did not have the opportunity to do so, and/or that the Debtors' representative was not adequately knowledgeable about the Debtors' affairs to have served as a proper representative. First, the trustee, as successor trustee,[18] has all the rights and duties that his predecessor had, no more and no less.[19] His predecessor had the right to examine the Debtors at the duly held § 341(a) meeting; that meeting has come and gone and there is now no more right for the present trustee to exercise in order to examine the Debtors. *See id.* § 343. Thus, an order under § 105 ordering the United States Trustee to reconvene or reopen the meeting would not be appropriate to carry out this provision of the Code.

Second, the court cannot conclude that Korenthal, the Debtors' CRO, was not knowledgeable regarding the Debtors' interests, property, and/or financial affairs, due to the reasons stated in the court's recounting of the facts above. Therefore, Korenthal was a proper representative of the Debtors, being, as he was, an officer of the Debtors.[20] This is because in corporate or company Chapter 7 bankruptcies, there is no discharge;[21] therefore, the only real purpose of the examination is to uncover the condition of the estate so that the trustee may know "its extent and whereabouts . . . that the rights of creditors may be preserved." *See Cameron v. United States*, 231 U.S. 710, 717 (1914) (construing § 21(a) of the 1898 Bankruptcy Act, a

---

[17] *See, e.g.*, 11 U.S.C. § 704(a)(1), (4).
[18] 11 U.S.C. § 703.
[19] *See Successor*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor."); *cf. Whiting v. Hudson Tr. Co.*, 138 N.E. 33, 37, 39 (N.Y. 1923) (stating that where original trustee had actual notice of his own fraud/theft in a certain trust-related transaction, this knowledge, and the corresponding liability stemming therefrom, passed to his successor trustee, an unrelated agent of the court, because a successor assumes the trust with all the burdens and liabilities of their predecessor-in-interest).
[20] "[w]hen any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: (A) if the debtor is a corporation, 'debtor' includes, if designated by the court, any or all of its officers . . . ." Fed. R. Bankr. P. 9001(5).
[21] 11 U.S.C. § 727(a)(1).

similar provision dealing with examination). There is nothing to indicate, based on the information that Korenthal would have acquired in carrying out his duties as CRO, that he could not have testified under oath in a knowledgeable manner about the likely extent of the Debtors' estates. More importantly, no objections were raised at the § 341(a) meeting in February, over which the current trustee's predecessor-in-interest presided and by whose actions the current trustee is bound in these circumstances.[22]

Moreover, the court notes that the trustee's duties under the Code are not being frustrated by this ruling. The trustee has ample recourse, either under Rule 2003(f) or Rule 2004, to examine the Debtors' principals in this case should the circumstances warrant such an examination, making the relief requested under § 105 even less appropriate. As noted by a leading Bankruptcy treatise commenting on § 343, "[i]nformation needed by the trustee and other parties can normally be obtained through other means." 3 COLLIER ON BANKRUPTCY, ¶ 343.02[5] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed.). Owing to this, one of the Code's "central objectives," namely the maximization of the value of the estate through the discovery of its probable extent by examination of the Debtors' pre-bankruptcy officers, would not be furthered here by using § 105, because this type of examination does not depend on the existence of an ongoing § 341(a) meeting. *See In re Caesars Entertainment Operating Co.*, 808 F.3d 1186, 1188–89 (7th Cir. 2015) (stating that the use of § 105 is "appropriate to carry out the provisions" of the Code where its use would further one of the "Code's central objectives").

What very limited case authority there is directly on this point supports this conclusion. For example, in discussing *Matter of Mission Carpet Mills, Inc.*, 10 B.R. 494 (B.A.P. 9th Cir.

---

[22] This last point holds true regardless of whether the court accepts the trustee's contention that Korenthal was really an outside professional who did not have the requisite knowledge to represent the Debtors at the February meeting. That contention is not supported by the Debtors' application to employ filed in January.

1981),[23] the Eighth Circuit noted, in affirming a bankruptcy judge that had denied a creditor's motion to re-open the previously concluded § 341 meeting, that "[t]hat case [*Mission Carpet Mills*, where the court did use § 105 to re-open the § 341 meeting] differs from the one *sub judice* in that here, Carlson sought *only an examination of the debtor*. He has not alleged any circumstances necessitating *such an unusual action* by the court." *Matter of Boucher*, 728 F.2d 1152, 1155 (8th Cir. 1984) (emphasis added). Here, the trustee seeks only the examination of the Debtors with the Debtors already having been subject to examination, as in *Boucher*. This circumstance alone does not warrant the use of § 105 by this court.

### Conclusion

Due to the fact that the § 341(a) meeting in this case has been concluded and will not be reopened, and because the meeting currently being called therefore is a special creditors' meeting with no noticed purpose that requires the examination of the Debtors, the motion is hereby granted. The Debtors need not appear at any continuation of the May meeting.

Dated: 10/2/2017

*/s/ Deborah L. Thorne*
DEBORAH L. THORNE
UNITED STATES BANKRUPTCY JUDGE

---

[23] This case affirmed a bankruptcy judge who had used § 105 to reopen a prior concluded § 341(a) meeting where the second largest creditor in the case had given two powers of attorney for its vote in a trustee election at the initial § 341 meeting, with that creditor's now-confused vote only becoming important after another creditor's vote was excluded after the meeting had already been concluded. *Mission Carpet Mills, Inc.*, 10 B.R. at 495–96.