IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | Case No. 16-39654 |
| | ) | |
| Argon Credit, LLC, et al., | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Hon. Deborah L. Thorne |
| | ) | (Jointly Administered) |

## MEMORANDUM OPINION

This case poses the question of the meaning and enforceability of a subordination
agreement against a presumably subordinate creditor who is seeking to enforce a subpoena for a
Rule 2004 Examination.  Fund Recovery Services, LLC ("FRS") filed a motion to quash the
subpoena originally served upon it by Eugene Crane, chapter 7 trustee of Argon Credit, LLC and
Argon X, LLC (together, the "Debtors" or "Argon").  The Trustee is no longer actively pursuing
the subpoena, but it is being pursued by Margon, LLC, the Mark Triffler Trust and the Cardinal
Trust (jointly referred to as "Margon" unless otherwise indicated).[1]  Although the subpoena was
served well over a year ago, the parties attempted to resolve disputes until the fall of 2018 when
the cooperation disappeared and Margon filed an Opposition to the FRS Motion to Quash.  The
court has reviewed the pleadings filed by both parties and the matter is now ripe for decision.

### FACTUAL BACKGROUND[2]

#### The Underlying Agreements

Pre-petition, Argon operated an online lending platform providing near-prime consumer
installment loans. On May 1, 2015, Fintech Financial, LLC (Fintech) lent Argon $20 million
under the terms of a revolving credit facility (the revolver). Argon also granted Fintech liens in

---

[1] In other words, all references to "Margon" should be read as referring also to the two trusts (in addition
to Margon).
[2] Since this proceeding is a contested matter and no party requested an evidentiary hearing, no such
hearing was held. No such hearing was required. *See In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y.
2013) (emphasis added) (quoting *In re Gonzalez–Ruiz*, 341 B.R. 371, 381 (1st Cir. BAP 2006)).

all of its then-existing or after-acquired property, both real and personal, to secure repayment. The facility closed on May 5.

The next day Fintech assigned all of its interests in and rights arising out of the revolver, including its liens, to Princeton Alternative Income Fund, LP (Princeton). At some point prior to February of 2016, Fintech and/or Princeton increased Argon's loan under the revolver to $37,500,000. Certain insiders[3] of Argon, namely Margon, had also made loans to Argon prior to February of 2016.

Margon lent money to Argon prior to the Fintech closing in May of 2015. According to FRS, Margon and Fintech entered into a subordination agreement as part of the original May 2015 deal, an agreement in which Margon agreed to subordinate its claim against Argon to that of Fintech. That subordination agreement between Margon and Fintech was then amended in February of 2016, which was also when the trusts *initially* entered into their subordination agreements with Fintech. Both trusts had also previously lent money to Argon.

### Argon Bankruptcy Filing and the March 28, 2017 Stipulated Order

Argon filed a voluntary petition under chapter 11 of the Bankruptcy Code in December of 2016. In January 2017, the case was converted to a chapter 7. Several months later, a stipulated order was entered into between Deborah Ebner, the original chapter 7 trustee,[4] and FRS that provided, among other things, for parties in interest and the trustee to coordinate regarding discovery surrounding FRS's claim (Docket No. 129). All requests were to be served by the trustee, but if a party in interest had conferred in good faith with the trustee and if the trustee were not going to proceed with a discovery request, then that party could serve and enforce its

---

[3] The term insiders is used herein to refer to actors having substantial pre-petition equity interests in Argon; the term is not being used in its technical, statutory sense.
[4] Eugene Crane was subsequently appointed chapter 7 trustee.

*own* discovery on a separate track without filing a separate Rule 2004 motion in the bankruptcy court.

In 2017, the trustee served a subpoena on FRS demanding a wide range of documents. FRS moved to quash the subpoena. FRS's motion was continued for a long while until late 2018, when Margon responded to the motion to quash and attempted to enforce the trustee's subpoena directly after having conferred in good faith with the trustee and after having received his approval.

FRS is now attempting to interpose the subordination agreements entered into between it and Margon. FRS argues that Margon's efforts to directly obtain discovery from it run afoul of those agreements. Margon counters that (1) the court lacks subject matter jurisdiction to adjudicate this contested matter, (2) the subordination agreements were never validly assigned to FRS, (3) the agreements do not bar it from obtaining discovery on behalf of the trustee and/or the estate, and (4) in any event, the agreements do not bar discovery regarding FRS's own fraud.

For the following reasons, the Motion to Quash will be granted as to Margon but not as to the trustee.[5]

## Discussion

FRS's argument is simple and well-taken. The Bankruptcy Code provides, in a plain and straightforward provision, that "[a] subordination agreement is enforceable in a case under this title *to the same extent* that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a) (emphasis added). And as the Supreme Court has often reminded, "Congress

---

[5] It should be noted, however, that this court's decision in this matter does not determine whether Margon is precluded from pursuing the discrete fraudulent-inducement issue by way of a separate proceeding should it desire to do so.

says in a statute what it means and means in a statute what it says there." *Hartford Underwriters*

*Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations omitted).

The subordination agreements at issue provide in relevant part that:

**5. Standby Limitation**

Notwithstanding any breach or default by the Parent or any other Obligor under the Subordinated Loan Documents, the Subordinated Lender shall not at any time or in any manner foreclose upon, take possession of, or attempt to realize on any Collateral, *or proceed in any way to enforce any claims it has or may have against the Parent or any other Obligor unless and until the Obligations to the Senior Lender have been fully and indefeasibly paid and satisfied in full.*

*See* Margon's Response, Docket No. 340–1, Ex. 3, at 25, Ex. 4, at 39, Ex. 5, at 53 (emphasis

added).

In the court's opinion, this standby limitation constitutes an explicit and express "silent

seconds" provision aimed at preventing "obstructionist behavior"; it goes above and beyond the

mere maintenance of the "hierarchy of lien priorities." *In re MPM Silicones, L.L.C.*, No. 15-CV-

2280(NSR), 2019 WL 121003, at *11 (S.D.N.Y. Jan. 4, 2019). It prevents Margon (the

subordinated lender) from using the bankruptcy process to affirmatively obtain discovery from

FRS (the senior lender) respecting FRS's claim against Argon.

Delaware law bears this out. The agreements provide that Delaware law governs their

interpretation, and the parties do not dispute this point. Under Delaware law, a subordination

agreement is a contract, and contracts are interpreted according to their plain meaning where

they are clear and unambiguous. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del.

2010).[6]

---

[6] As seen below, Margon does not dispute FRS's reading of the standby limitation provision; it merely argues that it is acting on behalf of the estate and is therefore not subject to the standby limitation provision. For that reason, and because the court determines that FRS's proffered reading of the provision is reasonable, there is no ambiguity. The agreement, including the standby limitation provision, can therefore be given its plain meaning. *Osborn*, 991 A.2d at 1159–60.

4

Case 16-39654    Doc 395    Filed 01/10/19    Entered 01/10/19 16:21:32    Desc Main
                        Document       Page 5 of 19

Again, the plain text of the agreements prevents Margon from "proceed[ing] in any way to enforce any claims" against Argon. *See* Margon's Response, Docket No. 340–1, Ex. 3, at 25, Ex. 4, at 39, Ex. 5, at 53. Margon and the trusts only have standing under the order and under Rule 2004 because of their status as "parties in interest." *See* Fed. R. Bankr. P. 2004(a); Stipulation and Agreed Order, Docket No. 129, at 4, ¶ 4. And they are only "parties in interest" because they have claims against Argon (claims that may be affected by this bankruptcy proceeding) for the money they have lent to Argon, proofs of which have been duly filed. *See Matter of FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996); Proofs of Claim, 16bk39654, 16–1, 17–1, 18–1.[7]

The plain meaning of the standby limitation prevents them from affirmatively obtaining Rule 2004 discovery, because any act to obtain Rule 2004 discovery in this bankruptcy case is a calculated, if intermediate, act to enforce the claims they have against Argon.[8] It simply cannot be assumed by the court that Margon is asking for discovery for no reason; they cannot be presumed to be irrational.

Margon offers a number of arguments as to why it should not be barred from seeking Rule 2004 discovery directly from FRS despite the plain meaning of the subordination agreements and section 510(a) of the Bankruptcy Code. The court considers each in turn.

## I.        Subject Matter Jurisdiction

---

[7] Margon also holds equity interests in at least one of the Debtors. That alone, however, does not confer party in interest status on Margon and/or the trusts independently of their *claims* for money lent, since they have no "legally protected interest" based on the equity interests alone absent a showing of a possibility of a surplus estate. *See, e.g., In re Xenon Anesthesia of Texas, PLLC*, No. 13-37697-H3-7, 2016 WL 4063879, at *2 (Bankr. S.D. Tex. July 27, 2016), *aff'd sub nom. Matter of Xenon Anesthesia of Texas, P.L.L.C.*, 698 F. App'x 793 (5th Cir. 2017). No such showing has been made, nor has any argument been offered on the subject. Hence the court will not consider Margon or the trusts' status as equity interest holders in considering their standing as parties in interest.

[8] Specifically, in trying to discover ways to object to *FRS's claim* against the estate, they are trying to obtain a greater bankruptcy dividend *on their claims* than that to which they would otherwise be entitled.

Margon contends that this court does not have subject matter jurisdiction over this matter. This is unfounded as the district court has original jurisdiction over all cases under title 11 and over all proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334(a)–(b). "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has exercised its power to refer all such matters to this court. N.D. Ill. L.R. 40.3.1(a).

The present dispute stems from a stipulated order entered by this court on March 28, 2017, wherein the court stated that:

> FRS shall provide the Trustee and other parties in interest, upon request, all available information reasonably requested by the Trustee or such parties in interest to permit an analysis of the FRS claims within the Examination Period. In order to minimize duplicative discovery, the Trustee and all parties in interest seeking discovery relating to FRS's claims shall coordinate for the issuance of joint discovery requests to FRS, with all initial joint discovery requests to FRS being issued through the Trustee's counsel. If a party in interest has made a good faith effort to coordinate its discovery requests with the Trustee's counsel in the first instance, then such party may serve discovery on FRS in accordance with Bankruptcy Rule 2004 without the need for further court order. Any party in interest that does not first coordinate with the Trustee's counsel for the issuance of joint discovery requests to FRS may seek such discovery by filing a motion in accordance with Bankruptcy Rule 2004.

Stipulation and Agreed Order, Docket No. 129, at 4, ¶ 4.

The court's authority to issue such an order stems from Fed. R. Bankr. P. 2004. The court unquestionably had subject matter jurisdiction to issue that order. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 622 (Bankr. D. Del. 2016) (noting that "Rule 2004 arises in title 11 of the Bankruptcy Code") (internal quotations omitted). Having entered the March Order, the court has subject matter jurisdiction now to interpret and enforce the order. *In re Motors*

*Liquidation Co.*, 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014). In short, this proceeding arises in a

case under title 11, and the court has subject matter jurisdiction over it.

This conclusion is not altered by the fact that the resolution of this proceeding requires

the consideration of state contract law. Proceedings arising in cases under title 11 frequently

require the resolution of ancillary state law issues. If the existence of a state law issue does not,

on its own, divest a proceeding of "core" status, *see* 28 U.S.C. § 157(b)(3), then certainly the

existence of such an issue does not deprive this court of subject matter jurisdiction over a

proceeding clearly arising in a case under title 11. *See In re Marcus Hook Dev. Park, Inc.*, 943

F.2d 261, 266 (3d Cir. 1991) (recognizing that subject matter jurisdiction and the "core" nature

of a given proceeding are "wholly separate"; implying that the grant of subject matter

jurisdiction to bankruptcy courts is *broader* than the range of core proceedings within which

bankruptcy courts may enter final orders). Simply put, in the precise context of the present

dispute in this case, the court has subject matter jurisdiction to resolve the state law issues

presented by the subordination agreements. *Cf. In re Best Prod. Co., Inc.*, 68 F.3d 26, 30–33 (2d

Cir. 1995); *see also* Proofs of Claim, 16bk39654, 16–1, 17–1, 18–1.

## II.   Statutory Authority[9]

The court need only resolve the question as to whether or not this proceeding is core if

the order resolving this dispute is a final order. *See In re Reed*, 94 B.R. 48, 51 (E.D. Pa. 1988); *In

re One-Eighty Investments, Ltd.*, 72 B.R. 35, 37 (N.D. Ill. 1987); *In re Kennedy*, 48 B.R. 621,

622 (Bankr. D. Ariz. 1985); *In re Smeltzer Plumbing Sys., Inc.*, No. ADV 08-A-96001, 2011 WL

6176213, at *3 (Bankr. N.D. Ill. Dec. 12, 2011). The order entered in this proceeding will

prohibit Margon from directly obtaining discovery from FRS based on the subpoena and the

terms of the stipulated order. Such a discovery order is an interlocutory, not a final, order. *See In*

---

[9] While Margon's argument goes only to subject matter jurisdiction, it seems appropriate to address the proceeding's core status, *see* 28 U.S.C. § 157(b)(3), at this juncture.

re Gray, 447 B.R. 524, 528–32 (E.D. Mich. 2011); In re Kaiser Grp. Int'l, Inc., 400 B.R. 140,

144 (D. Del. 2009); In re Towers Fin. Corp., 164 B.R. 719, 720–21 (S.D.N.Y. 1994); Matter of

Vance, 165 F.3d 34, 1998 WL 783728, at *1 (7th Cir. 1998) (unpublished). Whether this

proceeding is core or not under section 157 is therefore irrelevant.[10]

The court now turns to Margon's remaining arguments.

### III.    Undeveloped Forum Selection Clause Argument

In a footnote, Margon argues that FRS does not have the right to raise the subordination

agreements here in bankruptcy court because of a clause in the subordination agreements

purporting to vest exclusive jurisdiction elsewhere. It offers no authority in support of its

argument. The court therefore does not consider the argument. See United States v. Funds in the

Amount of $574,840, 109 F. Supp. 3d 1043, 1046 (N.D. Ill. 2015) (noting that arguments

unsupported by citation to relevant authority are deemed waived).

### IV.    Argument Regarding the Assignment of the Subordination Agreement Rights to FRS

Margon also argues that FRS was never validly assigned the rights arising under the

subordination agreements at issue. The subordination agreements upon which FRS relies were all

executed in February of 2016, but the purported assignment of those agreements from Fintech to

Princeton happened in May of 2015, prior to when the agreements existed. Then, in December of

2016, Princeton purportedly assigned those same agreements to FRS.

Pennsylvania law purports to govern the Fintech-Princeton assignment document, and no

party disputes this point; the court will therefore apply Pennsylvania law in determining the

---

[10] For the same reason, namely that the order being entered is interlocutory, there are no constitutional concerns that need be addressed by this court. See, e.g., In re Residential Capital, LLC, 531 B.R. 25, 53 n.9 (Bankr. S.D.N.Y. 2015).

effect of the assignment document. *See In re Grede Foundries, Inc.*, 440 B.R. 497, 499 (Bankr. W.D. Wis. 2010).

Pennsylvania law recognizes the ability of an assignor to assign its rights to performance to an assignee. "An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *Horbal v. Moxham Nat. Bank*, 697 A.2d 577, 583 (Pa. 1997). Contractual rights, of course, may be assigned. *See Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 532 (W.D. Pa. 2012).

Additionally, a party can agree, in exchange for a sufficient consideration, to assign rights arising in the future, and those rights will be equitably assigned to the assignee as soon as they come into existence. *In re Norris' Estate*, 198 A. 142, 147–48 (Pa. 1938); *see also In re Musselman's Estate*, 431 A.2d 1002, 1004–05 (Pa. 1981).

"An assignment will ordinarily be construed in accordance with the rules of construction governing contracts and the circumstances surrounding the execution of the assignment document." *Employers Ins. of Wausau v. Com., Dep't of Transp.*, 865 A.2d 825, 831 (Pa. 2005).

> In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa. Super. Ct. 2013).

Here, Fintech purported to assign all "Financing Agreements" related to the $20,000,000 loan that had been made pursuant to the revolver. *See* Margon's Response, Docket No. 340–1, Ex. 2, at 14, ¶ 1.a., 21 (loan schedule). "Financing Agreements" is a term not defined in the assignment, but the assignment document does speak of "Financing Agreements" as "referred to [in the Loan Agreement]." *See* Margon's Response, Docket No. 340–1, Ex. 2, at 14, ¶ A. It

therefore makes sense to look to the Loan Agreement to see what "Financing Agreements" means, since the term is explicitly defined there.

The term "Financing Agreements" is defined as encompassing, *inter alia*, "all other agreements, documents and instruments now or *at any time hereafter executed* and/or delivered by Borrower or any Obligor in connection with this Agreement." FRS's Reply, Docket No. 372–1, Ex. A, at 8, ¶ 1.31 (emphasis added). The "Borrower" is Argon X. *Id.* at 2 (preamble). Argon X did in fact execute each subordination agreement. *See* Margon's Response, Docket No. 340–1, Ex. 3, at 31, Ex. 4, at 45, Ex. 5, at 59.

Based on the assignment document and upon the definition of the term "Financing Agreements" in the main loan agreement, the subordination agreements entered into in February of 2016 were intended to be assigned when they came into existence and could be so assigned from Fintech to Princeton under Pennsylvania law. No-one has brought the adequacy or sufficiency of the consideration paid by Princeton to Fintech into question. The rights arising under the loan agreements were assigned by Fintech to Princeton as soon as they came into existence. *Norris' Estate*, 198 A. at 147–48; *see also Musselman's Estate*, 431 A.2d at 1004–05.

This in turn means that Princeton assigned those same rights to FRS in December of 2016. *See* Margon's Response, Docket No. 340–1, Ex. 6, at 65–67. FRS may therefore enforce the subordination agreements at issue in this proceeding. *See, e.g.*, *In re Boyajian*, 367 B.R. 138, 144–45 (B.A.P. 9th Cir. 2007) (explaining the concept of assignment), *aff'd*, 564 F.3d 1088 (9th Cir. 2009).

## V.   The Argument that Margon is Acting on Behalf of the Estate

Margon also argues that "(1) pursuant to the Stipulation that FRS negotiated with (among others) Margon, Margon seeks such discovery on the estate's behalf and with Trustee's explicit consent to investigate claims belonging to the estate; and (2) the subordination agreements do not bar Margon from seeking discovery for the estate's benefit." Margon's Response, Docket No.

10

340, at 10–11. Margon's argument has some appeal, since it can plausibly be said that if it is

pursuing discovery on behalf of the estate, it is not acting to enforce any of its claims against

Argon, at least not directly, and therefore its actions might not be forbidden under the language

of the standby limitation.[11]

Essentially, Margon's argument boils down to the idea that the trustee has consented to

allow Margon to act on the trustee's behalf for the benefit of the estate, since the trustee does not

have the resources to pursue discovery himself.

In order to evaluate this argument, it is necessary to return to the pertinent language of

the stipulated order under which Margon is attempting to proceed.

> FRS shall provide the Trustee and other parties in interest, upon request, all
> available information reasonably requested by the Trustee or such parties in
> interest to permit an analysis of the FRS claims within the Examination Period. In
> order to minimize duplicative discovery, the Trustee and all parties in interest
> seeking discovery relating to FRS's claims shall coordinate for the issuance of
> joint discovery requests to FRS, with all initial joint discovery requests to FRS
> being issued through the Trustee's counsel. *If a party in interest has made a good
> faith effort to coordinate its discovery requests with the Trustee's counsel in the
> first instance, then such party may service discovery on FRS in accordance with
> Bankruptcy Rule 2004 without the need for further court order.* Any party in
> interest that does not first coordinate with the Trustee's counsel for the issuance
> of joint discovery requests to FRS may seek such discovery by filing a motion in
> accordance with Bankruptcy Rule 2004.

Stipulation and Agreed Order, Docket No. 129, at 4, ¶ 4 (emphasis added).

Standing alone, this language does not support Margon's argument. The first sentence of

the order contemplates separate discovery requests from the trustee and other parties in interest.

The second sentence then imposes something of an administrative limitation; parties in interest

---

[11] Margon makes no other argument regarding the language of the subordination agreement; it does not
argue, for instance, that the language of the standby limitation is not broad enough to cover discovery-
seeking activities in a bankruptcy case generally (regardless of Margon's acting on behalf of the estate or
not). As such, the court considers only Margon's argument that it is acting on behalf of the estate and that
the language of the subordination agreement does not bar *this* type of action; the court will *not* attempt to
independently challenge the idea that the subordination agreement covers Rule 2004 discovery in the
abstract. *In re Schwinn Bicycle Co.*, 251 B.R. 508, 512 (Bankr. N.D. Ill. 2000) ("The Court does not have
a duty to research and construct legal arguments for a party.").

and the trustee are to coordinate their requests, with the trustee being the only party able to

actually issue discovery requests to FRS. No party may serve their own discovery requests upon

FRS under the authority of the stipulated order and without a separate motion unless they have

first made a good faith effort to coordinate with the trustee. If a party in interest does not wish to

even try to coordinate, that party may proceed by regular motion in the bankruptcy court for

independent leave to obtain discovery from FRS under Fed. R. Bankr. P. 2004.

The order therefore allows discovery to be obtained by a party in interest without a new

motion in bankruptcy court as long as the discovery relates to FRS's claims and as long as the

party attempts in good faith to coordinate with the trustee. If the party in interest were to proceed

normally by motion under Rule 2004, surely no one would presume, without more, that the party

were moving for Rule 2004 discovery on behalf of the trustee and/or the estate. They would be

moving on behalf of themselves as a party in interest.

Since the stipulated order at issue basically provides a slightly more streamlined

discovery process vis-à-vis FRS's claims, there is no reason to similarly believe that any party in

interest who confers in good faith with the trustee (and who thus may serve discovery on FRS

without further leave of court) is necessarily stepping into the trustee's shoes and/or representing

the estate when they themselves serve discovery on FRS or seek leave to serve discovery on FRS

pursuant to the terms of the order.

None of the communications between Margon and the trustee works to alter the

conclusion that Margon is seeking discovery on behalf of itself, not on behalf of the estate. See,

for example, the following e-mail between Margon, the trusts and the trustee (the e-mail having

been sent by the trustee to Margon):

> In coordination with your clients Margon LLC, the Cardinal Trust, and the Mark
> Triffler Trust (collectively, "Creditors"), the Trustee has served document requests
> on various parties pursuant to paragraph 4 of the order entered by the Court on
> March 29, 2017. While the Trustee believes that the Creditors have in good faith

coordinated with the Trustee with respect to the pending discovery requests to FRS and persistently pressed for discovery from FRS via the Trustee's counsel, FRS is not willing to produce all of the requested documents. At this time, the Trustee does not believe that the estate's limited resources are best used to aggressively pursue this discovery. *The Trustee reserves the right to pursue the requests later. As such, Trustee does not object to Creditors serving discovery directly upon FRS, with the understanding that the Creditors share any information they receive with the Trustee.*

Margon's Opposition to FRS's Mot. Quash, Docket No. 318–1, Ex. 7, at 22 (emphasis added).

A later e-mail confirms Margon's understanding that it was to share discovery with the trustee. *See id.*

Margon's argument relies heavily on the idea that the trustee manifested an intent for Margon to act on his behalf, representing the estate, because the trustee wanted any obtained discovery to be shared with him. Margon's Response, Docket No. 340, at 10 ("Notably, Trustee conditioned this consent upon Margon's agreement to share any discovery obtained from FRS with Trustee."). This sharing agreement is fairly ambiguous vis-à-vis the trustee's intent to have Margon act on his behalf. It is clear that two legal entities can agree to share discovery with one another – even enter into a legally binding contractual commitment to do so – without creating something akin to an agency relationship whereby one party is deemed to be acting on behalf of the other in actually obtaining any discovery.

Moreover, two additional facts cut against Margon's argument regarding the trustee's intent. First, the trustee explicitly reserved the right to pursue the discovery requests later. Thus, the trustee is preserving his separate discovery requests and implying an understanding that Margon would be pursuing discovery on an entirely separate track; indeed, if Margon were truly to be standing in the shoes of the trustee and representing him and/or the estate, it is difficult to see how the trustee could be afforded a second bite at the apple later to subject FRS to duplicative discovery. The trustee's desire to preserve his own discovery requests thus belies the idea that he was really authorizing Margon to act on his behalf in obtaining discovery from FRS.

13

Secondly, the trustee and Margon are direct adversaries in separate litigation before this court. *See* Trustee's Complaint, 18ap00947, Docket No. 1. As represented to this court by the trustee many times over the past year, the trustee has been investigating and preparing the groundwork for this litigation for a long time, at least during the mid-2018 timeframe when the trustee allegedly consented to Margon acting on his behalf. *See* Margon's Opposition to FRS's Mot. Quash, Docket No. 318–1, Ex. 7, at 22 (e-mails from May of 2018). It is odd to say that the trustee intended to allow Margon to act on his behalf at the same time that he was likely preparing the groundwork for a lawsuit against them. At the very least, if authority *were* granted by the trustee to act on his behalf, that authority is now plainly inconsistent with the fact that the trustee and Margon are on opposite ends of a pending adversary proceeding, an adversary proceeding that directly implicates the claims that Margon and the trusts have against Argon, claims upon which they are trying to obtain payment by conducting the discovery at issue in this proceeding.

In sum, the facts presented by the stipulated order and by the e-mail communications offered to this court as documentary evidence do not fairly give rise to the inference that the trustee has authorized Margon to act on his behalf and to represent the estate in obtaining discovery from FRS. While one fact could be seen as supporting this interpretation (the fact that the trustee conditioned his consent on Margon agreeing to share discovery), at least two other facts contradict this interpretation. Margon is therefore not acting on behalf of the trustee and/or the estate.

## VI.    Amendment/Waiver

Next, Margon makes a cursory argument that provisions in the subordination agreements may be waived, amended, or modified as long as long as FRS signs a writing evidencing such waiver, modification, or amendment. This argument is not supported by authority. *See United*

*States v. Funds in the Amount of $574,840*, 109 F. Supp. 3d 1043, 1046 (N.D. Ill. 2015) (noting

that arguments unsupported by citation to relevant authority are deemed waived).

At any rate, the argument is deficient. There is, in essence, a private statute of frauds in

the subordination agreements that requires all modifications, waivers, or amendments to be in

writing and signed by FRS. *See, e.g.*, Margon's Response, Docket No. 340–1, Ex. 3, at 29, ¶ 21.

There still must be, of course, a waiver, modification, or amendment in the first place. In this

context, amendment and modification are synonymous. *See Modification*, Black's Law

Dictionary (10th ed. 2014); *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 83 (Tex. App. 1996).

"Any amendment to a contract, whether written or oral, relies on the presence of mutual

assent and consideration." *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Ch.

2000); *see also Josloff v. Falbourn*, 125 A. 349, 349 (Del. 1924) ("It is well settled, that one of

the parties to a contract cannot modify such contract or terminate it lawfully unless the other

party assents thereto."); *De Cecchis v. Evers*, 174 A.2d 463, 464 (Del. Super. Ct. 1961) ("A

contract having been made, no modification of it could be brought about without the consent of

both parties and without consideration.").

Margon's problem is that there is nothing in the stipulated order evidencing its assent to

any modification or amendment of the subordination agreements. The stipulated order was

signed only by FRS and the trustee, and no mention is made anywhere of Margon or the trusts.

*See* Stipulation and Agreed Order, Docket No. 129. Without any evidence of assent, the

stipulated order cannot be treated as a modification or amendment of the subordination

agreements *between Margon, the trusts and FRS*. *See Rutledge*, 750 A.2d at 1232; *Josloff*, 125

A. at 349; *De Cecchis*, 174 A.2d at 464. As such, the fact that the stipulated order is in writing

and has been signed by FRS is irrelevant; there is no evidence of any assented-to modification or

amendment of the subordination agreements in the first place.

Waiver is different. "A waiver is the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power." *Nathan Miller, Inc. v. N. Ins. Co. of New York*, 39 A.2d 23, 25 (Del. Super. Ct. 1944); *see also In re NextMedia Grp., Inc.*, 440 B.R. 76, 84 (Bankr. D. Del. 2010). "It involves both knowledge and intent, and is based on the idea of consent, express or implied. In strictness, waiver is referable to the act or conduct of one party only. It depends on what one party intended to do . . . ." *Nathan Miller*, 39 A.2d at 25.

"Intention is the foundation of the doctrine of waiver, and an intention to waive will not be implied from slight circumstances, or from circumstances consistent with an intention to rely on the right alleged to have been waived." *Id.* at 27. FRS, in entering into a stipulation with the trustee allowing the trustee and parties in interest to obtain discovery from it relating to its claim, has not unequivocally demonstrated an intent to waive any provision in the subordination agreements that it had specifically with Margon. The stipulated order presents "slight circumstances" at best for the idea that FRS would waive the core provisions of its subordination agreements; there are certainly plenty of other parties in interest to which the stipulated order may be referring. Margon and the trusts are not the only creditors of or holders of interests in Argon. In short, the stipulated order does not unequivocally evidence a waiver under Delaware law of any of FRS's rights as against Margon under the various subordination agreements, since the circumstances presented to the court by the stipulated order are wholly "consistent with an intention to rely on the right alleged to have been waived" by FRS. *See id.* at 27.

## VII.   Fraud

Finally, Margon argues that fraud is afoot and that it may properly investigate FRS's or other entities' fraud without running afoul of the subordination agreements.

> Even if arguendo FRS may validly enforce the subordination agreements, it cannot rely on them to bar Margon, on the estate's behalf, from investigating Princeton's

potential fraudulent conduct *against Debtors*. As Margon explains in its
Opposition, there is evidence that Princeton may have fraudulently induced *Argon*
to execute the loan documents, including the subordination agreements, by: (i)
promising a $75M line of credit without any intention of providing a line of this
magnitude; (ii) knowing that *Argon* would rely upon this promise; and (iii)
intentionally reneging on this promise. As such, as assignee, FRS cannot invoke
the subordination agreements to bar investigation into the fraud of its predecessors-
in-interest because a subordination agreement cannot: (i) prevent claims for
rescission for fraudulently inducing *Debtors* to enter into the loan transaction,
including the subordination agreements that *Debtors* executed; and (ii) exculpate
FRS from its own fraud.

Margon's Response, Docket No. 340, at 13–14 (emphasis added).

There is no freewheeling policy in Delaware calling for the non-enforcement of

bargained-for contractual provisions entered into between sophisticated commercial actors

whenever anyone claims that fraud has been practiced upon third-parties, as Margon claims here.

In *Lesa*, a non-Delaware case, the court determined that an action by the subordinated lenders to

rescind *their subordinated loans* with the common borrower was not barred by a subordination

provision narrowly read by the court as preventing the enforcement and collection of the

subordinated debt; "[a]n action to collect on a Subordinated Debt seeks payment of the benefits

due under the debt, whereas an action to rescind the Subordinated Debt seeks to repudiate its

very existence." *Lesa, LLC v. Family Tr. of Kimberley & Alfred Mandel*, No. 15-CV-05574-

KAW, 2016 WL 6599912, at *5 (N.D. Cal. Nov. 8, 2016). Neither Margon nor the trusts are

attempting to rescind *their* loan agreements with Argon. *Lesa* is therefore inapposite.

Similarly, Margon cites Delaware cases that have to do with rescission between

contracting parties. In *Abry Partners*, the Delaware Court of Chancery ruled that a contractual

provision will not bar the ability of one of the contracting parties to press a claim for rescission

based on fraudulent inducement when the well-pleaded allegation is that the other party lied

about a fact contained within the contract itself. *Abry Partners V, L.P. v. F & W Acquisition

LLC*, 891 A.2d 1032, 1035–36, 1064 (Del. Ch. 2006). Also, it has been ruled that an anti-reliance

clause will not bar a fraud claim even where that claim is based on pre-contractual statements not embodied in the contract itself, at least where the alleged misrepresentations would frustrate the very purpose and nature of the contract. *Overdrive, Inc. v. Baker & Taylor, Inc.*, No. CIV.A. 5835-CC, 2011 WL 2448209, at *6 (Del. Ch. June 17, 2011). These cases offer no *direct* help to Margon.

What is clear is that this court cannot enforce the subordination agreements *between* Margon and FRS to the extent that they are unenforceable under Delaware law due to FRS's fraud. *See* 11 U.S.C. § 510(a); *In re Credit Indus. Corp.*, 366 F.2d 402, 409 (2d Cir. 1966) (noting that *if* a subordination agreement is unlawful, the court is not presented with the "problem of enforcing express contractual provisions"); *In re Weis Sec., Inc.*, No. 73 CIV. 2332, 1976 WL 810, at *2 (S.D.N.Y. July 15, 1976). And an agreement induced by fraud is *voidable* at the option of the innocent party to the agreement. *Lincoln Nat. Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*, 28 A.3d 436, 441 (Del. 2011). The contracts, of course, remain enforceable until they are voided, and this court must enforce them in this bankruptcy case until they are voided. *See* 11 U.S.C. § 510(a).

There is nothing preventing Margon from attempting to bring (1) an adversary proceeding[12] to contest the enforceability of the agreements on the grounds of fraud, or, assuming there are no problems with the automatic stay, from attempting to bring (2) an action in a different court of competent jurisdiction to contest the enforceability of the agreements on the grounds of fraud. Discovery from FRS would be available to Margon under the ordinary civil rules on that discrete issue under any of the above avenues, assuming the allegations are well-

---

[12] An adversary proceeding would likely need to be attempted to be brought because of the equitable nature of any action to rescind or void the agreements on the grounds of fraud. *See* Fed. R. Bankr. P. 7001(7). That being said, such an action could conceivably also be brought as a contested matter if no party objected. *See, e.g., In re Data Entry Serv. Corp.*, 81 B.R. 467, 468 n.1 (Bankr. N.D. Ill. 1988).

pleaded.[13] But its affirmative attempts to obtain discovery directly from FRS under the stipulated

order and/or under Rule 2004 in this bankruptcy case is barred by the subordination agreements

unless and until it succeeds in such an action.

### Conclusion

Under section 510(a) of the Code, subordination agreements entered into between

creditors are to be enforced in bankruptcy cases. The enforcement of the relevant subordination

agreements here prevents Margon from affirmatively acting to obtain Rule 2004 discovery from

FRS relating to FRS's claim against their common borrower, Argon. If Margon believes the

subordination agreements to be voidable as to it under Delaware law due to fraud, it may pursue

that theory in a discrete action.


Enter:

United States Bankruptcy Judge


Dated: January 10, 2019

---

[13] That is, the court sees no reason why discovery would not be available under the ordinary civil rules
applicable in that proceeding. That being said, that precise issue is not before the court, and the court is
not purporting to decide it now.